PUBLIC SERVICE COMPANY OF COL-
ORADO, a Colorado corporation, Ap-
plicant–Appellant,

v.

The BOARD OF WATER WORKS OF
PUEBLO, COLORADO; Arkansas Val-
ley Ditch Association; William R. Bak-
er; Bent County Board of County Com-
missioners; Jake O. Broyles; Catlin
Canal Company; Colorado Canal Com-
pany; State of Colorado (State and Di-
vision Engineers); State of Colorado
(Division of Wildlife); District 67 Ditch
Association; Fort Lyon Canal Compa-
ny; Holbrook Mutual Irrigating Com-
pany; Loyde and Fontella Gardner;
Lake Henry Reservoir Company; Lake
Meredith Reservoir Company; Eula
Ridley, Harrell Ridley; St. Charles
Mesa Water District; John and Alice
Shiba; Southeastern Colorado Water
Conservancy District; Florence Ste-
phens; Loyal and Ilene Stephens; Jack
and Marie Wagner, Kirk Wagner; Walt
and Elizabeth Wagner; and Robert and
Arlene West, Objectors–Appellees.

No. 90SA518.

Supreme Court of Colorado,
En Banc.

June 8, 1992.
As Modified on Denial of Rehearing
June 29, 1992.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Chad M. Neuens (James R. McCotter, Public Service Co. of Colorado, of counsel), Denver, for applicant-appellant.

Petersen and Fonda, William F. Mattoon, Pueblo, Carlson, Hammond and Paddock, John U. Carlson, Melanie Kopperud Backes, Denver, for objector-appellee Bd. of Water Works of Pueblo, Colo.

Michael T. Mitchell, Parker, Rexford L. Mitchell, Las Vegas, Nev., for objectors-appellees Arkansas Valley Ditch Ass'n and Catlin Canal Co.

Mark A. MacDonnell, Las Animas, for objectors-appellees William R. Baker and Bent County Bd. of County Comm'rs.

Vranesh and Raisch, Michael D. Shimmin, Douglas A. Goulding, Boulder, for objector-appellee Jake O. Broyles.

Anderson, Johnson & Gianunzio, Gregory L. Johnson, Colorado Springs, for objectors-appellees Colorado Canal Co., Lake Henry Reservoir Co., and Lake Meredith Reservoir Co.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Christine A. Klein, Asst. Atty. Gen., Natural Resources Section, Denver, for objector-appellee State of Colo., State Engineer, and Div. Engineer for Water Div. 2.

Shinn Lawyers, Carl M. Shinn, Lamar, for objector-appellee Dist. 67 Ditch Ass'n.

Lefferdink and Bullock, John S. Lefferdink, Lamar, for objector-appellee Fort Lyon Canal Co.

Ralph N. Wadleigh, La Junta, for objector-appellee Holbrook Mut. Irrigating Co.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, Denver, for objectors-appellees Loyde and Fontella Gardner, Eula Ridley, Harrell Ridley, John and Alice Shiba, Florence Stephens, Loyal and Ilene Stephens, Jack and Marie Wagner, Kirk Wagner, and Walt and Elizabeth Wagner.

Fairfield and Woods, P.C., Howard Holme, Denver, for objector-appellee Southeastern Colorado Water Conservancy Dist.

No appearance for objector-appellee State of Colo., Div. of Wildlife.

No appearance for objector-appellee St. Charles Mesa Water Dist.

No appearance for objectors-appellees Robert and Arlene West.

Justice LOHR delivered the Opinion of the Court.

Public Service Company of Colorado (PSCo) appeals from the judgment of the District Court for Water Division 2 (water court) dismissing PSCo's application for approval of conditional rights of exchange on the Arkansas River. We affirm.

## I.

This litigation has a long and complex history. An understanding of that history, in broad outline, will provide a useful background for discussion of the issues concerning the propriety of the dismissal of the application. The water rights subject to the application for conditional rights of exchange are absolute surface rights represented by shares in two mutual ditch companies, the Las Animas Consolidated Canal Company (Consolidated) and the Consolidated Extension Canal Company (Extension).[1] PSCo owns a majority of the shares issued and outstanding in each company.[2] The water rights owned by Consolidated and Extension will be referred to collectively as the Las Animas rights.

The Las Animas rights historically were based on diversion and beneficial use of waters of the Arkansas River for agricultural purposes in southeastern Colorado in Bent County. Surface water was initially diverted from the river at the Las Animas Consolidated Canal headgate which is located at a point on the south side of the river near the western boundary of Bent County. Consolidated provided water to its shareholders through two ditches originating near that headgate. The tail of one of these ditches, referred to in this proceeding as the Las Animas Consolidated Canal,[3] connects to the beginning point of Extension's ditch, which serves Extension's shareholders and eventually tails into John Martin Reservoir on the Arkansas River in central Bent County. The configuration and operation of these ditches is described in more detail in *Wagner v. Allen*, 688 P.2d 1102, 1103–04 (Colo.1984).

Based on a series of environmental and plant siting studies conducted in the 1970s, PSCo determined that an additional power generation facility would be needed in the Arkansas Valley. PSCo purchased its share of the Las Animas rights around 1980 in preparation for construction and operation of the proposed power plant, designated as the Southeast Plant. The proposed plant site is just south of the Extension ditch and southwest of the John Martin Reservoir, near the town of Las Animas, in Bent County. The Southeast Plant has not been built. An existing power station, the Comanche Power Plant, is operated by PSCo approximately 130 river miles upstream from the Southeast Plant site, in

1. For a detailed description of the surface rights owned by Consolidated and Extension see *Wagner v. Allen*, 688 P.2d 1102, 1103–04 (Colo.1984).

2. There are 562.00 issued and outstanding shares of stock in Consolidated, of which PSCo owns 430.33, and 1,233.00 issued and outstanding shares in Extension, of which PSCo owns 660.25. In addition, Extension owns 95.07 shares of the 562.00 outstanding shares in Consolidated.

3. The report in *Wagner v. Allen*, 688 P.2d 1102 (Colo.1984), refers to this ditch as the Jones Ditch, a reference that is probably more precise.

the Arkansas Valley near the city of Pueblo.[4]

In case number 80CW52, PSCo applied for a change of water rights with respect to its share of the Las Animas rights to permit direct application and storage for use in generation of electrical power at the Southeast Plant, among other uses.[5] The water court granted the application by a decree dated November 20, 1984 (1984 change decree), and permitted PSCo to implement the requested changes subject to certain conditions set forth in the decree to protect the rights of minority shareholders of the mutual ditch companies involved and the rights of others dependent on return flows from historical uses of the Las Animas rights.[6] These conditions included the requirement that the waters be diverted at the Las Animas Consolidated Canal headgate and that an off-channel surface reservoir be constructed for storage at the plant site. PSCo was permitted to continue the historical irrigation use of the water pending construction of the new plant, but upon implementation of the change by use at the Southeast Plant, the land on which the water formerly had been used was no longer to be irrigated. The 1984 change decree also requires calculation of PSCo's share of all waters diverted at the Las Animas Consolidated Canal headgate. Only a portion of PSCo's entitlement, designated "net loss water," is available to it for consumptive use, either by immediate application or after storage. Net loss water is defined in the 1984 change decree as "the difference between the amount of water available and historically diverted for irrigation, and the historic return flows." The balance of the water, the "historic return flows," must be returned to the Arkansas River system.

On April 29, 1987, in case number 85CW114, the water court granted PSCo's application for determination of a conditional water right to store 20,000 acre-feet of water carried by the Las Animas Consolidated Canal in the proposed Southeast Plant Reservoir (1987 storage decree) for generation of electrical power and other uses. This is the proposed off-channel surface reservoir referred to in the 1984 change decree. The terms and conditions of the 1984 change decree are expressly incorporated into the 1987 storage decree.

Based on many factors, including decreased demand for electrical power, the changing economics of generating such power, and Public Utilities Commission regulatory standards concerning the authorization of new power generation facilities, the construction of the Southeast Plant has been postponed indefinitely. Evidence presented by PSCo at trial indicated that PSCo currently is not disbursing or budgeting any funds towards construction of the plant. A PSCo executive testified by deposition that construction of the plant remains as part of PSCo's long-range plans. The plant may be built within the next ten to twenty years, according to this testimony, but the decision will be based on future developments, many of which are not within PSCo's control. As a consequence of the deferral of construction of the Southeast Plant, including the Southeast Plant Reservoir, PSCo possesses valuable water rights in the lower Arkansas River Valley without the ability to use them for other than agricultural purposes under the terms of the 1984 change decree. In order better to utilize this valuable resource, PSCo seeks to exchange the water for use upstream at its Comanche Power Plant near Pueblo.

PSCo originally applied for both a change and exchange of water rights. The application was made on behalf of all the Extension and Consolidated shareholders.[7]

4. The Comanche Power Plant was constructed in the mid 1970s.

5. The application in 80CW52 involved the surface rights at issue here as well as certain ground water rights exercised by diverting through wells.

6. In *Wagner v. Allen*, 688 P.2d 1102, 1107 (Colo. 1984), this court affirmed the decree in 80CW52

subject to the requirement that the decree be amended to incorporate a report prepared for PSCo, "the Wheeler Report," describing the historical use of the water rights that were the subjects of the decree.

7. PSCo first applied for the change and exchange on December 31, 1985. The application was amended twice, once in September 1987 and once in March 1989, in order to delete and

Specifically, PSCo proposed to change the place of use of the Las Animas rights to include an alternate place of use at the Comanche Power Station by diverting the water upstream near the Comanche Pumping Plant. PSCo also proposed to establish alternate places of storage in John Martin Reservoir, Pueblo Reservoir, Lake Henry Reservoir, and Lake Meredith Reservoir,[8] in addition to the conditionally decreed place of storage in Southeast Plant Reservoir. PSCo also sought a decree for conditional rights of exchange of the Las Animas rights (1) from the Las Animas Consolidated Canal headgate to all of those reservoirs, (2) among all of those reservoirs, and (3) from such headgate or any such reservoir to the Comanche Power Plant, all in aid of supplying water for use at that plant.[9] PSCo stated in its application that it had no present right to store water in any of the reservoirs except the conditional storage right in the Southeast Plant Reservoir decreed in the 1987 storage decree.

The objectors [10] timely filed statements of opposition pursuant to section 37–92–302(1)(b), (c), 15 C.R.S. (1990). The water court held a pretrial conference at which certain disputed legal issues were identified for the parties to address by pretrial motion. As relevant here, the objectors contended that the application was not consistent with the terms and conditions of the 1984 change decree, and incorporated in the 1987 storage decree, because the 1984 change decree requires that the net loss water be diverted at the Las Animas Consolidated Canal headgate and that a storage facility be constructed near the Southeast Plant site. The water court agreed, and ruled that

unless applicants present evidence and prove that the different mode of operation contemplated by the current application will not injure any water rights, the terms, conditions, limitations and operating criteria adopted by this Court in [the 1984 change decree] and incorporated in [the 1987 storage decree] are necessary to protect against injury and must continue in full force and effect, whether applicants use their water at the proposed plant in Bent County or by exchange at any other location in the Arkansas River Basin.[11]

Based on the water court's ruling, PSCo determined that it would be necessary to amend and republish the change of water rights portion of its application and to supplement its discovery responses. It therefore moved to vacate the approaching trial date. The water court denied this motion. In an effort to preserve its right to priority for administration of its conditional exchange rights in the hierarchy of rights for which applications were filed in 1985, see § 37–92–306, 15 C.R.S. (1990), PSCo then sought to proceed to trial on only those issues presented by its application for conditional rights of exchange. To accomplish this, PSCo moved either to bifurcate the trial of the two sets of issues or to dismiss the change portion of the case without prejudice so that it could refile an application for change of water rights as a separate proceeding. The water court granted PSCo's motion, dismissed the change portion of the application without prejudice, and permitted PSCo to proceed to trial as scheduled on the exchange segment of its application. In doing so the court stated: "There may well be some difficulties that the Applicant will be facing in pursuing the exchange portion. But I think that I have

correct certain elements of the proposed plan and to set forth the plan of exchange more specifically and clearly.

8. Pueblo Reservoir is located just west of the city of Pueblo on the Arkansas River. Lake Henry Reservoir and Lake Meredith Reservoir are located in southern Crowley County north of the Arkansas River.

9. PSCo also sought to make absolute an exchange right for eighty cubic feet of water per

second from John Martin Reservoir to the Las Animas Consolidated Canal headgate. The court denied this part of the application because PSCo presented no evidence to show that the water had been applied to a beneficial use. This determination was not appealed by PSCo.

10. The parties who appear in this court as objectors-appellees were among those who filed statements of opposition to PSCo's application.

11. PSCo did not appeal this ruling.

to give to [PSCo] the opportunity to proceed ... with respect to the exchange."[12]

The case proceeded to trial. At the close of PSCo's case, some of the objectors moved for dismissal of the application for conditional rights of exchange, pursuant to C.R.C.P. 41(b). The water court granted the motion based on PSCo's failure to adduce proof adequate to satisfy the "can and will" provisions of section 37–92–305(9)(b), 15 C.R.S. (1990). The court concluded that PSCo had no present intent to build the Southeast Plant Reservoir, which is central to the proposed exchanges. The court ruled that PSCo "cannot overcome this objection by asking that this conditional decree be conditioned on obtaining yet another decree [deleting from the 1984 change decree the requirement that a storage reservoir be constructed] when it cannot be determined whether that decree will ever be obtained."

On appeal, PSCo argues that the water court erred in dismissing its application because (1) the court improperly applied the "can and will" standard of section 37–92–305(9)(b) in a manner that constituted an impermissible collateral attack on a conditional water right already decreed in another proceeding, (2) the court incorrectly placed the burden of proving economic feasibility on PSCo, (3) the court erred by requiring PSCo to present more than a prima facie case to defeat the mid-trial motion to dismiss, and (4) the ruling was based on issues not designated in the pretrial order.[13] We disagree with each of these arguments, and affirm the water court's judgment dismissing the application.

## II.

■ PSCo's primary contention on appeal is that the water court misapplied the "can and will" standard of section 37–92–305(9)(b), 15 C.R.S. (1990), in dismissing its application for determination of conditional rights of exchange. An exchange is an appropriative right and is adjudicated in the same manner as other rights of appropriation. See §§ 37–80–120(4), 37–83–104, and 37–92–302(1)(a), 15 C.R.S. (1990). Pursuant to the Water Right Determination and Administration Act of 1969 (Act), §§ 37–92–101 to –602, 15 C.R.S. (1990 & 1991 Supp.), a conditional water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6). "Conditional water right decrees are designed to establish that the 'first step' toward the appropriation of a certain amount of water has been taken

12. According to the briefs of the parties the change portion of the case subsequently was refiled as case number 90CW54, and is currently pending in the water court.

13. PSCo specifically raised the following issues in its notice of appeal:
   1. Whether a conditionally decreed water right can be collaterally attacked in another Water Court proceeding inconsistent with that conditional decree and the presumption of diligence.
   2. Whether the Applicant has the burden of proof on the issue of economic feasibility as announced in *Public Service Company of Colorado v. Blue River Irrigation Company*, 753 P.2d 737 (Colo.1988), and *Public Service Company of Colorado v. Blue River Irrigation Company*, 782 P.2d 792, 794 (Colo.1989).
   3. Whether it is appropriate at the conclusion of the Applicant's case-in-chief to enter an order of dismissal pursuant to Rule 41(b) C.R.C.P. upon an issue that was never specifically raised in the Pre–Trial Order nor reasonably anticipated by the Applicant.

   4. Whether it is the burden of the Applicant in a water court proceeding to have established a *prima facie* case at the conclusion of its case-in-chief or whether the court can made [sic] factual determinations based upon disputed evidence and enter a dismissal in accordance with Rule 41(b) C.R.C.P.
   5. Whether the trial court properly applied the "can and will" standard of C.R.S. § 37–92–305(9)(b) to the facts and circumstances of this case.
   6. Whether the holdings in *Rowe v. Bowers*, 160 Colo. 379, 417 P.2d 503 (1966) and *Teodonno v. Bachman*, 158 Colo. 1, 424 [404] P.2d 284 (1965) are applicable in a water court proceeding at the conclusion of the applicant's case-in-chief.

However, in its brief to this court, PSCo condensed and combined issues four and six and issues five and one for purposes of discussion. Because these sets of issues are interrelated we also choose to consider them jointly.

and to recognize the relation back of the ultimate appropriation to the date of that first step." *City of Aspen v. Colorado River Water Conservation Dist.*, 696 P.2d 758, 761 (Colo.1985); *accord, e.g., City of Thornton v. City of Fort Collins*, 830 P.2d 915, 924 (Colo.1992). A conditional water right is established upon the concurrence of an intent to appropriate water for application to beneficial use and the performance of overt acts in furtherance of that intent. *Bar 70 Enters., Inc. v. Tosco Corp.*, 703 P.2d 1297, 1307 (Colo.1985); *City and County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d 730, 745 (Colo.1985). "The concurrence of intent and overt acts qualifies as the first step toward an appropriation of water, and the date on which the first step is taken determines the date of the appropriation." *City of Thornton*, 830 P.2d at 925. The overt acts required to establish a conditional water right must perform three functions: "(1) to manifest the necessary intent to appropriate water to beneficial use; (2) to demonstrate the taking of a substantial step toward the application of water to beneficial use; and (3) to constitute notice to interested persons of the nature and extent of the proposed demand upon the water supply." *Bar 70 Enters.*, 703 P.2d at 1307; *accord City of Thornton*, 830 P.2d at 925; *City of Aspen*, 696 P.2d at 762–63. In addition, pursuant to section 37–92–305(9)(b), a conditional water right may not be decreed

> except to the extent that it is established that the waters can be and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

This section "requires proof that water will be diverted and that the project will be completed with diligence *before* issuance of a decree for a conditional right." *Southeastern Colorado Water Conservancy*

*Dist. v. City of Florence*, 688 P.2d 715, 718 (Colo.1984) (emphasis in original); *accord City of Thornton*, 830 P.2d at 926.

In dismissing the application, the water court concluded that PSCo did not intend to implement the exchanges in a manner consistent with the requirement of the 1984 change decree that PSCo construct an off-channel surface reservoir at the site of the Southeast Plant for storage of water obtained by exercise of its share of the Las Animas rights. In its order the court ruled that

> before there can be any exchange as contemplated by the Application for a conditional exchange decree, the Southeast Plant reservoir must be constructed. This proposed reservoir would be located on the site of a proposed electric generating plant near Las Animas, Colorado. The Applicants' expert ... testified that, therefore, an application for a change decree will be sought to remove this requirement, which was imposed in [the 1984 change decree], an earlier change case brought by these Applicants. The Court further FINDS that no plans have been prepared for the Southeast reservoir, including the pipelines or other structures into and out of the reservoir. Because no plans have been made for the reservoir, there is no evidence concerning the cost to construct it, from which the Court could make findings that its construction would be economically feasible. *Public Service Company v. Blue River Irrigation Company*, 753 P.2d 737 (Colo. 1988). All of this leads to the clear conclusion that the Applicants have no present intent to build the Southeast reservoir, which is a key to the exchange plan. Applicants cannot overcome this objection by asking that this conditional decree be conditioned on obtaining yet another decree, when it cannot be determined whether that decree will ever be obtained.[14]

14. *Cf. Fox v. Division Engineer*, 810 P.2d 644, 645 (Colo.1991) ("a conditional right to divert water which would injure senior appropriators may not be decreed except in conjunction with a plan for augmentation assuring enough available water to exercise the right"); *City of Florence*, 688 P.2d at 717–18 ("can and will" standard of § 37–92–305(9)(b) precludes issuance of conditional water right decree absent proof of availability of unappropriated water; possibility

■ PSCo asserts that the court's finding that it had no present intent to construct the Southeast Plant Reservoir cannot be sustained because it is in conflict with, and amounts to a collateral attack on, the 1987 storage decree, adjudicating a conditional storage right for the Southeast Plant Reservoir. PSCo argues that the granting of the decree in that case establishes that it has proceeded with diligence to finance and construct the Southeast Plant Reservoir, the structure upon which that decree is based.

The 1987 storage decree was granted on April 29, 1987, and reflects the court's finding that *as of that date* PSCo had taken the steps necessary to initiate a conditional storage right. This necessarily included the finding that PSCo had the intent to appropriate, which in turn means that it intended to construct the reservoir and had proceeded with diligence up to that time. *See, e.g., Bar 70 Enters.,* 703 P.2d at 1307. The issuance of the conditional storage right decree in 1987, however, says nothing about PSCo's subsequent actions or intent. PSCo's application for conditional rights of exchange required the water court to determine whether the exchanges "can and will" be effectuated. *See* § 37–92–305(9)(b). This necessitated that the court determine whether the Southeast Plant Reservoir "can and will" be built, because the changes of water rights decreed in the 1984 change decree were expressly conditioned on the construction of such a reservoir. Moreover, PSCo's ability to implement the exchanges and use the water at the Comanche Power Plant in turn was dependent on the effectiveness of the changes adjudicated in the 1984 change decree. In applying the "can and will" standard, the water court assessed PSCo's intent with respect to building the reservoir at the time relevant to the application for conditional rights of exchange. The court's finding that PSCo no longer intended to construct

Southeast Plant Reservoir is not inconsistent with a finding that it did have such an intent at the time it secured the 1987 storage decree and therefore does not constitute a collateral attack on the 1987 storage decree.

■ PSCo also argues that the water court's finding of lack of intent to construct Southeast Plant Reservoir is inconsistent with the 1987 storage decree because that decree "ordered that the conditional right herein awarded is hereby continued in full force and effect until April 30, 1991." That provision, however, is merely part of a paragraph prescribing the time for filing the next application for a finding of reasonable diligence, and obviated any need for PSCo to demonstrate diligence by proof in a judicial proceeding before that period expired in order to maintain its conditional water right in effect. *See* § 37–92–301(4)(a). It was not intended, and could not have been intended, as a finding that PSCo's intent and diligence in pursuing the construction of the reservoir would continue throughout that future period. PSCo's application for conditional rights of exchange necessitated an earlier inquiry into PSCo's continuing intent because of the "can and will" requirement of section 37–92–305(9)(b). We perceive no inconsistency between the determination of intent necessitated by the application for conditional rights of exchange and the provision in the 1987 storage decree prescribing the date for the first filing of an application for finding of reasonable diligence.

■ PSCo acknowledged at trial that in order to effectuate the proposed exchanges in a manner consistent with the 1984 change decree it would be necessary to divert the water at the Las Animas Consolidated Canal headgate and transport it down the canal, and that a storage reservoir be built at the site of the Southeast

of available water based on unpredictable factors of climate, economics and technology insufficient); *Lionelle v. Southeastern Colorado Water Conservancy Dist.,* 676 P.2d 1162, 1167–68 (Colo.1984) (conditional water storage right cannot be decreed in advance of obtaining approval of plan for augmentation necessary to

protect holders of senior rights from injury); *Bohn v. Kuiper,* 195 Colo. 17, 19, 575 P.2d 402, 403 (1978) (conditional decree for underground water right cannot be granted in advance of approval of plan for augmentation necessary to protect holders of senior rights against injury).

Plant.[15] That it is PSCo's intent not to comply with the conditions set forth in the 1984 change decree in operating the proposed exchanges is evidenced not only by the testimony of its own expert at trial, but also by the terms of its change application in case number 90CW54 [16] in which PSCo requests a change in the terms and conditions for the use of its share of the Las Animas rights as reflected in the 1984 change decree. Particularly relevant to its intent to operate the exchanges proposed here is PSCo's request that the water court delete the requirements that all diversions of net loss water occur at the Las Animas Consolidated Canal headgate and that the Southeast Plant Reservoir be constructed. Because the evidence supports the water court's finding that PSCo has no present intent to build Southeast Plant Reservoir, with the result that there is no expectation that the proposed exchange plan can ever be implemented, we hold that the water court properly concluded that PSCo failed to satisfy the "can and will" requirement of section 37–92–305(9)(b).

### III.

■ PSCo also maintains that the water court's ruling erroneously implies that as an applicant it bears the burden of proving the economic feasibility of its project. In *Public Service Co. v. Blue River Irrig. Co.*, 753 P.2d 737, 742–43 (Colo.1988) (*Blue River I*), we held that the economic feasibility of a proposed project is a relevant factor for consideration in a diligence proceeding.[17] Later, in *Public Service Co. v. Blue River Irrig. Co.*, 782 P.2d 792, 794

(Colo.1989) (*Blue River II*), we declined to hold that the applicant, Blue River, had the burden of proof regarding that issue. *Blue River I* and *Blue River II* were decided in the context of a diligence proceeding under section 37–92–301(4), whereas here the water court was determining whether PSCo had complied with the "can and will" standard of section 37–92–305(9)(b). We conclude that the economic feasibility of a project is also a factor relevant to the determination of whether an applicant for a conditional water right decree can and will divert, store, or otherwise capture, possess, and control the subject waters and whether "the project can and will be completed with diligence and within a reasonable time." *See* § 37–92–305(9)(b).

■ In dismissing PSCo's application, the water court stated:

The Court further FINDS that no plans have been prepared for the Southeast reservoir, including the pipelines or other structures into and out of the reservoir. Because no plans have been made for the reservoir, there is no evidence concerning the cost to construct it, from which the Court could make findings that its construction would be economically feasible.

We do not understand the court's ruling to place the burden of proving economic feasibility on the applicant. Rather, the order treats the issue of economic feasibility as one relevant factor in determining whether the "can and will" standard has been satisfied, upon which PSCo offered no proof. The court did not consider the failure to present evidence regarding this issue as dispositive, but merely regarded the failure

**15.** PSCo argues on appeal that the exchanges can be operated in conformity with the 1984 change decree on an instantaneous basis without construction of the Southeast Plant Reservoir because the condition of construction of the reservoir was not intended as a protection for other water users. However, at trial PSCo's expert testified that construction of the reservoir was key to the exchange plan. In addition, except for a few statements made by PSCo's counsel early in the proceedings, the record, taken as a whole, does not support PSCo's argument that it was seeking approval of exchanges operated on an instantaneous basis. Finally, the construction of such a reservoir is an express condition of the 1984 change decree, upon

which the effectiveness of the proposed exchanges depend, as the water court determined in a ruling from which PSCo has not appealed.

**16.** *See* n. 12 above. A copy of the application is an appendix to the brief filed by The Board of Water Works of Pueblo, Colorado, and others.

**17.** § 37–92–301(4) requires the owner or user of a conditional water right to obtain a finding of reasonable diligence in the development of the proposed project every six years from the date of entry of the most recent decree in order to maintain the right in effect. *Darby v. All J Land & Rental Co.*, 821 P.2d 297, 299 (Colo.1991).

as one factor leading to its conclusion that PSCo had no present intent to build a structure, the Southeast Plant Reservoir, that is central to its plan of exchange. The court was entitled to consider the fact that PSCo presented no evidence of economic feasibility in concluding that the utility had no present intent to construct the Southeast Plant Reservoir and therefore could not meet the requirements of section 37–92–305(9)(b).

## IV.

■ PSCo next argues that the water court improperly applied C.R.C.P. 41(b) in dismissing its application. Rule 41(b)(1) provides in relevant part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render judgment until the close of all the evidence.

The water court found that pursuant to Rule 41(b)(1) PSCo was required to make more than a prima facie showing at mid-trial with respect to the issue of compliance with the "can and will" provisions of section 37–92–305(9)(b). The court based its decision on the holdings of *Rowe v. Bowers*, 160 Colo. 379, 417 P.2d 503 (1966), and *Teodonno v. Bachman*, 158 Colo. 1, 404 P.2d 284 (1965). These cases stand for the principle that if a case is tried without a jury, "the trial court is the finder of fact and may make its findings and render judgment against the plaintiffs at the close of the plaintiffs' case." *Teodonno*, 158 Colo. at 4, 404 P.2d at 285; *accord Rowe*, 160 Colo. at 381, 417 P.2d at 505. If the trial court as the finder of fact dismisses a case at mid-trial as provided in C.R.C.P. 41(b), "[t]he question on review of such action is not whether the plaintiffs made a prima facie case, but whether a judgment in favor of the defendant was justified on the plain-

tiffs' evidence." *Teodonno*, 158 Colo. at 4, 404 P.2d at 285; *accord Rowe*, 160 Colo. at 381, 417 P.2d at 505. As explained by Charles A. Wright and Arthur R. Miller in *Federal Practice & Procedure* § 2371 at 224–25 (1971):

> The court is not to make any special inferences in the plaintiff's favor nor concern itself with whether plaintiff has made out a prima facie case. Instead it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.

(Footnotes omitted.) PSCo argues that this rule is inapplicable to a water court proceeding.

In *Lake Meredith Reservoir Co. v. Amity Mutual Irrig. Co.*, 698 P.2d 1340, 1344 (Colo.1985), we held that except where altered by statute, the Colorado Rules of Civil Procedure apply in water court proceedings. *See also* C.R.C.P. 81(a) (providing that the Colorado Rules of Civil Procedure "do not govern procedure and practice in any special statutory proceeding insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute"). In *Lake Meredith* we applied the provisions of C.R.C.P. 41(b)(2) concerning dismissal of claims for failure to prosecute to a claim asserted in water court.

PSCo asserts that the rule announced in *Rowe* and *Teodonno* is inapplicable because the well-settled rule in water court proceedings is that an applicant need only establish a prima facie case, at which point the burden of going forward with evidence shifts to the objectors. PSCo relies on cases that establish the relative burdens of the parties on the issue of injury in a change of water right case. In that type of proceeding we have held that "once an applicant has made a *prima facie* showing that no injury will result from a proposed change in water rights, the burden of going forward with evidence of potential injury shifts to the objectors." *Wagner v. Allen*, 688 P.2d 1102, 1108 (Colo.1984); *see also CF & I Steel Corp. v. Rooks*, 178 Colo. 110, 114, 495 P.2d 1134, 1136 (1972); *Ackerman v. City of Walsenburg*, 171 Colo.

304, 310, 467 P.2d 267, 270–71 (1970). The statute that governs the standards for granting a change of water right is section 37–92–305(3). It states:

A change of water right or plan for augmentation, including water exchange project, shall be approved if such change or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right. In cases in which a statement of opposition has been filed, the applicant shall provide to the referee or to the water judge, as the case may be, a proposed ruling or decree to prevent such injurious effect in advance of any hearing on the merits of the application, and notice of such proposed ruling or decree shall be provided to all parties who have entered the proceedings. If it is determined that the proposed change or plan as presented in the application and the proposed ruling or decree would cause such injurious effect, the referee or the water judge, as the case may be, shall afford the applicant or any person opposed to the application an opportunity to propose terms or conditions which would prevent such injurious effect.

This statutory provision anticipates the active participation of the objectors in the determination of whether the proposed change would have an injurious effect. Such a scheme, including the rule reflected in our cases that the objectors have the burden of going forward with a showing of injury once an applicant has made a prima facie showing of absence of injurious effect, is entirely appropriate in this context because an objector often will have better access to evidence probative on the issue of injury than will an applicant. The shifting of the burden of going forward on the issue of injury in a change of water right case merely acknowledges that in that situation an objector is likely to be in a better position to obtain and present such evidence.

■■■ In contrast, a decree determining a conditional water right must be based on evidence of an intent to appropriate and of the performance of an overt act in furtherance of that intent. *E.g., City and County of Denver,* 696 P.2d at 745. Additionally, the "can and will" provisions of section 37–92–305(9)(b) must be met. Prior cases reveal that the applicant bears the burden of proving, by a preponderance of the evidence,[18] that the first step has been completed, *City of Aspen,* 696 P.2d at 761; *Rocky Mountain Power Co. v. Colorado River Water Conservation Dist.,* 646 P.2d 383, 388 (Colo.1982), and that the appropriation can and will be completed with diligence, *FWS Land & Cattle Co. v. Division of Wildlife,* 795 P.2d 837, 840 (Colo. 1990). The burden of proof thus falls squarely on the shoulders of the applicant for a conditional water right decree. In this situation there is no reason to adopt a rule that would shift the burden of going forward to the objectors after an applicant makes a prima facie showing. It is the applicant for a conditional water right that has access to the evidence necessary to establish that it has taken the first step towards appropriation and can and will proceed with diligence to complete the appropriation within a reasonable time. This situation is not like that present where a change of water right is sought and an objector has access to and control over evidence and information that can rebut an applicant's prima facie showing of noninjury.

PSCo directs us to no other rule or statute that alters the application of C.R.C.P. 41(b) in this context. We therefore hold that the water court did not err by relying on *Rowe* and *Teodonno* and requiring the applicant to establish more than a prima facie case at mid-trial to avoid judicial fact finding and dismissal under C.R.C.P. 41(b).[19]

---

**18.** *See* § 13–25–127(1), 6A C.R.S. (1987).

**19.** It is to be doubted that PSCo established even a prima facie case during its case-in-chief because of lack of evidence of intent to construct the Southeast Plant Reservoir and PSCo's acknowledgment that it hoped to obtain a future decree deleting the condition of construction of such a reservoir from the terms of the 1984 change decree. *See* n. 12 and n. 16 above.

## V.

██ PSCo lastly argues that the water court erred in granting the objectors' motion to dismiss because the dismissal was based on an issue that the pretrial order did not specify for determination at trial. C.R.C.P. 16(e) provides for the entry of a pretrial order and states that such an order "shall not be modified except upon good cause shown." In *Greenlawn Sprinkler Corp. v. Forsberg,* 170 Colo. 286, 293, 461 P.2d 22, 25 (1969) (decided under former rule), we observed that a pretrial order controls the subsequent course of a trial unless judicially modified.[20]  *Accord Ferguson v. Hurford,* 132 Colo. 507, 520, 290 P.2d 229, 236 (1955) (decided under former rule).

The water court based its dismissal order largely on its finding that there was no present intent to construct the Southeast Plant Reservoir, which is an essential element of the proposed exchange plan. PSCo asserts that because the issue of whether the Southeast Plant "can and will" be built was not identified in the pretrial order as an issue to be determined at trial, the dismissal was improper. We are satisfied, however, that although the pretrial order does not specifically address PSCo's intent to build the Southeast Plant Reservoir, the issues set for determination at trial clearly encompass this issue. The trial court found, and a PSCo witness testified, that the Southeast Plant Reservoir had to be constructed before the proposed exchanges could be accomplished. This is plainly correct, for the 1984 change decree upon which the proposed conditional rights of exchange are predicated conditions the changes thereby decreed upon the construction of such a reservoir. Accordingly, PSCo's present intent to build the reservoir is central to the issue of whether PSCo intends to appropriate the claimed exchanges. The issue of PSCo's intent to construct the reservoir is within the scope of issues set forth in the pretrial order pertaining to PSCo's intent relative to the overall project. For instance, the order provides that the following issues were in dispute and remained to be determined at trial:

3. Did the Applicants have the requisite intent to appropriate the claimed exchanges?

4. Did the Applicants demonstrate a fixed intent and overt acts sufficient to initiate appropriative rights of exchange and to constitute notice to third parties?

5. Is the Application in this case speculative in nature?

6. Did the Applicants have a specific plan and intent to divert, store, or otherwise capture, possess, and control a specific quantity of water by exchange for specific beneficial use at the time the original Application was filed?

7. Since the filing of the original Application, have the Applicants developed a specific plan and intent to divert, store, or otherwise capture, possess, and control a specific quantity of water by exchange for specific beneficial uses and, if so, can these activities relate back in time to the Applicants' original Application?

8. Can and will the Applicants divert, store, or otherwise capture, possess, and control the waters they seek to exchange?

9. Can and will the Applicants beneficially use the waters they seek to exchange?

10. Can and will the Applicants complete their purported project with diligence and within a reasonable time?

Whether PSCo has the present intent to construct a reservoir that is central to its planned exchanges is within the purview of these issues as they appear in the pretrial order.

We conclude that the court properly determined that PSCo did not comply with the "can and will" provisions of section 37–92–305(9)(b) and did not err in considering the issue of economic feasibility. In addition, the court applied the appropriate stan-

---

**20.** Under former rule 16 the standard for modification of a pretrial order was "to prevent manifest injustice." Under the current rule a pretrial order may be modified "upon good cause shown."

dards pursuant to C.R.C.P. 41(b) and did not base its dismissal on issues outside the scope of the pretrial order. Accordingly, we affirm the judgment of the water court dismissing PSCo's application for approval of conditional rights of exchange.