Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 19, 2019

**2019 CO 12**

**No. 16SA256, *Well Augmentation Subdist. v. Centennial Water & Sanitation Dist.* — Water Law — Burden of Proof.**

Centennial appealed from an order of the water court dismissing its objection to the Well Augmentation Subdistrict's proposal to use additional sources of replacement water for its previously decreed augmentation plan. Centennial had asserted that WAS failed to comply with the notice requirements of the decree itself and that this failure amounted to a per se injury, for which it was entitled to relief without any further showing of operational effect. The water court heard Centennial's motion objecting to WAS's proposed addition of new sources of replacement water and, without requiring WAS to present evidence, found that Centennial failed to establish prima facie facts of WAS's inability to deliver augmentation water in quantity or time to prevent injury to other water users. Referencing C.R.C.P. 41 as the appropriate procedural vehicle, the water court dismissed Centennial's objection.

The supreme court affirms, holding that because exercise of the water court's retained jurisdiction was statutorily limited to preventing or curing injury to other water users, and because the evidence presented by Centennial failed to establish that WAS

would be unable, under the conditions imposed by the Engineer for approval of the additional sources of replacement water, to deliver augmentation water sufficient to prevent injury to other water users, the water court's dismissal of Centennial's objection was proper.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 12

**Supreme Court Case No. 16SA256**
*Appeal from the District Court*
Weld County District Court, Water Division 1, Case No. 03CW99
Honorable James F. Hartmann, Water Judge

Concerning the Application for Water Rights of Well Augmentation Subdistrict of the Central Colorado Water Conservancy District and South Platte Well Users Association,

**Applicants-Appellees:**

Well Augmentation Subdistrict of the Central Colorado Water Conservancy District and South Platte Well Users Association,

v.

**Opposer-Appellant:**

Centennial Water and Sanitation District,

and

**Opposers-Appellees:**

Bijou Irrigation Company; Bijou Irrigation District; Cache La Poudre Water Users Association; City of Aurora; City of Black Hawk; City of Boulder; City and County of Denver acting by and through its Board of Water Commissioners; City of Englewood; City of Greeley acting by and through its Water and Sewer Board; City of Sterling; City of Thornton; City of Westminster; Ducommun Business Trust; East Cherry Creek Valley Water and Sanitation District; Farmers Reservoir and Irrigation Company; Fort Morgan Reservoir and Irrigation Company; Harmony Ditch Company; Henrylyn Irrigation District; Irrigationists' Association, Water District 1; Jackson Lake Reservoir and Irrigation Company; Lower Latham Reservoir Company; Lupton Bottom Ditch Company; Lupton Meadows Ditch Company; New Cache La Poudre Irrigating Company; Cache La Poudre Reservoir Company; North Poudre Irrigation Company; Pawnee Well Users, Inc.; Public Service Company of Colorado; Riverside Irrigation District; Riverside Reservoir and Land Company; South Adams County Water and

Sanitation District; State Engineer and Division Engineer; United Water and Sanitation District; and Westfarm, LLC,

and concerning

**Appellee Pursuant to C.A.R. 1(e):**

David Nettles, Division Engineer, Water Division 1.

---

**Judgment Affirmed**
*en banc*
February 19, 2019

---

**Attorneys for Opposer-Appellant:**
Buchanan Sperling & Holleman PC
Veronica A. Sperling
Paul F. Holleman
     *Boulder, Colorado*

**Attorney for Applicants-Appellees:**
Lawrence Jones Custer Grasmick LLP
David P. Jones
     *Johnstown, Colorado*

**Attorneys for Opposer-Appellee State Engineer and Division Engineer and Appellee Pursuant to C.A.R. 1(e) David Nettles, Division Engineer, Water Division 1:**
Philip J. Weiser, Attorney General
Paul L. Benington, First Assistant Attorney General
     *Denver, Colorado*

**Attorneys for Amicus Curiae City of Colorado Springs:**
City of Colorado Springs Attorney's Office
Michael Gustafson
     *Colorado Springs, Colorado*

Hill & Robbins, P.C.
David W. Robbins
Matthew A. Montgomery
     *Denver, Colorado*

No appearance by or on behalf of Bijou Irrigation Company; Bijou Irrigation District; Cache La Poudre Water Users Association; City of Aurora; City of Black Hawk; City of

Boulder; City and County of Denver acting by and through its Board of Water Commissioners; City of Englewood; City of Greeley acting by and through its Water and Sewer Board; City of Sterling; City of Thornton; City of Westminster; Ducommun Business Trust; East Cherry Creek Valley Water and Sanitation District; Farmers Reservoir and Irrigation Company; Fort Morgan Reservoir and Irrigation Company; Harmony Ditch Company; Henrylyn Irrigation District; Irrigationists' Association, Water District 1; Jackson Lake Reservoir and Irrigation Company; Lower Latham Reservoir Company; Lupton Bottom Ditch Company; Lupton Meadows Ditch Company; New Cache La Poudre Irrigating Company; Cache La Poudre Reservoir Company; North Poudre Irrigation Company; Pawnee Well Users, Inc.; Public Service Company of Colorado; Riverside Irrigation District; Riverside Reservoir and Land Company; South Adams County Water and Sanitation District; United Water and Sanitation District; or Westfarm, LLC.

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.

¶1 Centennial appealed from an order of the water court dismissing its objection to the Well Augmentation Subdistrict's proposal to use additional sources of replacement water for its previously decreed augmentation plan. Centennial had asserted that WAS failed to comply with the notice requirements of the decree itself and that this failure amounted to a per se injury, for which it was entitled to relief without any further showing of operational effect. The water court heard Centennial's motion objecting to WAS's proposed addition of new sources of replacement water and, without requiring WAS to present evidence, found that Centennial failed to establish prima facie facts of WAS's inability to deliver augmentation water in quantity or time to prevent injury to other water users. Referencing C.R.C.P. 41 as the appropriate procedural vehicle, the water court dismissed Centennial's objection.

¶2 Because exercise of the water court's retained jurisdiction was statutorily limited to preventing or curing injury to other water users, and because the evidence presented by Centennial failed to establish that WAS would be unable, under the conditions imposed by the Engineer for approval of the additional sources of replacement water, to deliver augmentation water sufficient to prevent injury to other water users, the water court's dismissal of Centennial's objection is affirmed.

**I.**

¶3 In 2003, the Well Augmentation Subdistrict of the Central Water Conservancy District and South Platte Well Users Association applied for approval of a plan for augmentation to replace out-of-priority well depletions to the South Platte River, and Centennial Water and Sanitation District, the appellant before this court, was one of the

4

opposers to that application. In 2008, the water court for Division 1 entered a decree approving WAS's augmentation plan, subject to the conditions specified in the decree. In 2015, WAS proposed to add certain sources of replacement water, as expressly permitted by the initial decree, by giving written Notice of Use of Water Rights for Augmentation to the water court, the Division Engineer, and all the objectors.

¶4 Centennial filed an objection to the addition of one particular category of replacement water in WAS's proposal, designated "Category 2" water, but that objection was dismissed on the ground that the decree permitted a challenge in the water court to a proposed additional or alternative source of replacement water only after that additional source had been approved by the Division Engineer, and only then by invoking the statutorily retained jurisdiction of the water court. After entertaining the objections of Centennial, the Engineer approved the use of WAS's proposed Category 2 water, subject to six specified conditions. Centennial again filed an objection, this time invoking the retained jurisdiction of the water court in reliance on the provisions of paragraph 45.2 of the decree and asserting that WAS's Notice of Use failed to fully comply with the requirements of paragraph 13.1 of the decree by failing to specify the available amount, location of delivery, and method of accounting for the use of its Category 2 water.

¶5 Over the objection of the Engineer, the court permitted Centennial to proceed under the court's retained jurisdiction, despite there not yet having been any operational experience with the additional sources, as approved by the Engineer; and after also granting Centennial's request for an evidentiary hearing on its motion objecting to the

additional sources of replacement water, the court ordered discovery and expert disclosures, and ultimately heard the motion. At the hearing, Centennial presented testimony, based on the report of its expert, to the effect that the notice provided by WAS failed to comply with paragraph 13.1, and therefore should be denied, and that if the Category 2 replacement water were permitted without requiring a separate notice complying with paragraph 13.1, additional terms and conditions would be required, to include a requirement that all available paragraph 13.1 information be provided to Centennial at least thirty days in advance of projection and use of any new Category 2 recharge accretions. At the close of Centennial's evidence, the water court made findings and concluded that Centennial had failed to factually establish that any injury would occur if the Category 2 sources of water were added to the augmentation plan under the conditions approved for administration by the Engineer, and it dismissed Centennial's objection.

¶6    In its ruling, the water court articulated more specifically its understanding of the controlling statutes, rules of procedure, and provisions of the decree, and how those authorities dictated its conclusion. With regard to its dismissal at that stage of the proceedings, the court found that C.R.C.P. 41 applied to this type of retained jurisdiction proceeding, and that in a proceeding to add a source of replacement water which the applicant had a legal right to use, Centennial, as the objector to the proposal, bore an initial burden of establishing prima facie facts proving that injury would occur under the conditions imposed by the Engineer. In light of Centennial's failure to even attempt to prove facts indicating that WAS would be unable to deliver augmentation water in

6

quantity and time to prevent injury to other water users under those conditions, the water court found that, as a matter of law, Centennial failed to establish a prima facie case of its entitlement to relief and, therefore, that dismissal was proper without requiring any further showing by WAS.

¶7 With regard to Centennial's continuing assertion that injury was sufficiently established by proving WAS's failure to comply with the notification procedures of the decree alone, the water court first found that for recharge credits that would only accrue from future diversions like the Category 2 water at issue here, estimates based on past deliveries would be sufficient to comply with the notice requirements of the decree. In any event, however, the water court interpreted the procedures of the decree, as left to the discretion of the water court by section 37-92-305(8) of the revised statutes, to allow for the addition of new sources of replacement water, without applying to the water court for a change in the plan, as long as WAS gave the required notification to the court, the Engineer, and objectors; objectors were afforded time to comment to the Engineer; the Engineer determined the conditions under which the additional proposed source could be used without causing injury to other water users and approved use of the additional source subject to those conditions; and any objectors were then permitted a challenge to the operational effect of the Engineer's decision by invoking the statutorily retained jurisdiction of the water court. On the grounds that the court retained jurisdiction only for the purpose of preventing or curing injury to other water rights resulting from implementation of a plan for augmentation, the water court found that even a violation

7

of the notification requirements of the decree, had one occurred, would be insufficient to entitle Centennial to relief.

¶8    Centennial appealed to this court from the water court's ruling.

## II.

¶9    A plan for augmentation is to be approved if it will not injuriously affect the owner of or persons entitled to the use of water under a vested water right or a decreed conditional water right. § 37-92-305(3)(a), C.R.S. (2018). More particularly, a plan for augmentation must be considered sufficient to permit the continuation of diversions when curtailment would otherwise be required to meet a senior call for water, to the extent that the applicant provides replacement water necessary to meet the lawful requirements of a senior diverter at the time and location and to the extent the senior would be deprived of his or her lawful entitlement by the applicant's diversion. § 37-92-305(8)(c). With regard to the decree approving such a plan, section 37-92-305(8), as amended in 2003, authorizes a plan for augmentation to provide procedures to allow additional or alternative sources of replacement water to be used in the plan after the initial decree is entered if, among other reasons, those sources have been decreed for such use. Ch. 204, sec. 5, § 37-92-305, 2003 Colo. Sess. Laws 1446, 1454. The amendment does not dictate more specifically any particular requirements for using additional or alternative sources of replacement water without formally amending its augmentation plan. *See id.*

¶10    As contemplated by statute, a decree for a plan for augmentation is effectively a prediction of how the plan can operate without causing injury to existing water rights.

8

*See* § 37-92-305(3)(a); *Farmer's Reservoir & Irrigation Co. v. Consol. Mut. Water Co.*, 33 P.3d 799, 811 (Colo. 2001). Section 37-92-304(6), C.R.S. (2018), expressly requires that any decision of the water judge dealing with a plan for augmentation include the condition that approval of the plan be subject to reconsideration on the question of injury to the vested rights of others, for whatever period after entry as is necessary or desirable to preclude or remedy any such injury. We have previously characterized this retained jurisdiction as functioning as a test period for the operation of the augmentation plan, during which the water court may test the prediction and finding of non-injury it made in its judgment and decree. *See Farmer's Reservoir & Irrigation Co.*, 33 P.3d at 811.

¶11     In pertinent part, the 2008 decree at issue in this case provides for the use of additional sources of various kinds, with the approval of the Division Engineer. *In re Application for Water Rights of Well Augmentation Subdist. of the Cent. Colo. Water Conservancy Dist. & S. Platte Well Users Ass'n*, No. 03CW99 (Dist. Ct. Water Div. 1 May 14, 2008) (Findings of Fact, Conclusions of Law, and Decree of the Water Court). As applicable to WAS's notification, section 13.1 permits the use of a water right not already approved for use under the decree, if that water right has been decreed for or is lawfully available for augmentation use; if WAS gives notice of its proposed use to the court, the Division Engineer, and all of the objectors; and if the Division Engineer approves that use. Notice of Use of Water Right for Augmentation must be given in writing, at least thirty days in advance, and must describe: (1) the water right, (2) the amount of water available to WAS from the water right, (3) the location the water will be delivered to the

9

stream, (4) evidence that the water will not be used by anyone else, and (5) how WAS will account for the use of the water.

¶12   In addition, section 45 of the decree indicates that the decreed Plan for Augmentation shall remain subject to perpetual general retained jurisdiction, pursuant to section 37-92-304(6), permitting any person, including the State and Division Engineers, to invoke retained jurisdiction by filing a motion with the court. It further requires that any motion to invoke retained jurisdiction set forth with particularity the factual basis and the alleged injury upon which the requested reconsideration is premised, together with proposed decree language modifications offered by the moving party to remedy the alleged injury. In language not dissimilar to holdings of this court dictating the relative burdens in a proceeding invoking the retained jurisdiction of a water court, *see Upper Eagle Reg'l Water Auth. v. Wolfe*, 230 P.3d 1203, 1216–17 (Colo. 2010), the section also specifies that the moving party shall have the initial burden of going forward to establish the prima facie facts and the existence of the injury alleged in the motion, but that WAS shall have the ultimate burden of proof to show either that the alleged injury has not occurred or will not occur, or to propose additional terms and conditions which will prevent the injury from occurring.

### III.

¶13   Despite the absence of any factual dispute concerning the actual content of WAS's notification, the water court found that Centennial failed to meet its burden for two different reasons. First, interpreting the decree as a whole to require no more than estimates with respect to sources as to which credits would continue to accrue pursuant

10

to a lease agreement, the court found that the notice given by WAS actually was sufficient to satisfy the decree. In this regard, it observed that elsewhere in the decree, other water users were adequately protected by limiting WAS's projections to credits that had already accrued. Second, interpreting the decree to permit additional sources of water upon approval of the Engineer, subject to challenge by invoking the court's retained jurisdiction to prevent or cure injury to other water users, just as would be the case with respect to the operational effect of the plan had no new source of replacement water been added, the court found that Centennial's objection failed, as a matter of law, because Centennial offered no evidence that injury to other water users had or would result from operation of the plan. We find it unnecessary to review the water court's interpretation of the decree concerning the required specificity because, at the very least, the court properly held Centennial to proof that more specific notice than that provided was necessary to prevent injury to other water users.

¶14     Centennial's assertions that strict compliance with the notice provisions of section 13.1 is required, that a failure to strictly comply constituted a per se injury, and that the water court erred in finding that Centennial did not meet its burden of proof, all appear to stem from a fundamental misconception about the meaning of the General Assembly's 2003 amendment to section 37-92-305(8). Centennial expressly asserts that a party seeking to add a new source of replacement water to an existing augmentation plan, as now permitted by statute, necessarily bears the same burden to prove that its plan will not injure other water users as was imposed on it for approval of its augmentation plan in the first instance. It reasons, therefore, that a failure to strictly comply with the notice

11

requirements of section 13.1 demonstrates a sufficient likelihood of injury to other users, in and of itself, and that by demonstrating a failure by WAS to comply, Centennial met its burden, which WAS should have been forced to rebut.

¶15     The 2003 amendment, however, authorizes decrees for plans for augmentation to include procedures to add replacement sources after a final decree entered, without requiring an applicant to seek a change of right or new augmentation plan.  Ch. 204, sec. 5, § 37-92-305, 2003 Colo. Sess. Laws 1446, 1454.  Nothing in section 37-92-305(8)(c) purports to require specific notification or other procedures for such an addition of replacement sources to the existing decree, and nothing in the statute suggests an expansion of the jurisdiction of the water court to entertain challenges to compliance with the terms of the decree once it has entered.  Not only is the imposition of any such requirement not implied in the language of the statute itself, but to impute such a requirement would be little short of mandating a court-approved change to the water right, effectively nullifying the 2003 amendment.

¶16     Rather, in addition to the seemingly unambiguous language of the amendment permitting the original decree to provide for the addition of new sources of replacement water not originally included, the historical context in which the amendment originated provides a strong motivation for the legislature to have intended precisely what it said. The General Assembly enacted SB 03–073 on the heels of two decisions from this court determining that, with limited statutory exceptions, it is the province of the water courts, not the Engineer, to approve and decree augmentation plans allowing for out-of-priority diversions.  *See Simpson v. Bijou Irrigation Co.*, 69 P.3d 50, 63 (Colo. 2003); *Empire Lodge*

12

*Homeowner's Ass'n v. Moyer*, 39 P.3d 1139, 1153 (Colo. 2001). Those decisions vitiated efforts by the Engineer to authorize out-of-priority pumping in the South Platte Basin and elsewhere through replacement plans and substitute supply plans in lieu of a decreed augmentation plan from the water court. *See Simpson*, 69 P.3d at 56; *Empire Lodge Homeowner's Ass'n*, 39 P.3d at 1144–45. Senate Bill 03–073 affirmed those holdings and specifically required groundwater users in the South Platte Basin to file for an augmentation plan in water court by 2006 or face curtailment. *See* Ch. 204, sec. 5, § 37-92-308, 2003 Colo. Sess. Laws 1446, 1446–47.

¶17    At the same time, SB 03–073, in its amendment to section 37-92-305(8), restored some authority to the Engineer by allowing decree holders, if so permitted in the decree, to add new replacement water sources without returning to water court. *See* Ch. 204, sec. 5, § 37-92-305, 2003 Colo. Sess. Laws 1446, 1454. Instead, the procedures imparted into the decree would condition when and how new sources could be added to the plan. *See id.* In this way, SB 03–073 contemplated that for this process, the Engineer, not the water court, would function as the primary safeguard for ensuring that the decree holder has followed those procedures and could add those sources to its plan without injury, sparing the decree holder from the kind of cumbersome water court process SB 03–073 specifically sought to avoid.

¶18    Understood as a process to allow for the use of new sources of replacement water, in accordance with conditions determined by the Engineer to be sufficient to prevent injury to other users, section 13.1 does not purport to duplicate the burden of proof required for a new augmentation plan, nor does section 37-92-305(8)(c) contemplate as

much. In the absence of expanded jurisdiction for review, the information to be provided the Division Engineer, and objectors with an interest in avoiding injury, is clearly mandated to facilitate the inclusion of conditions designed to minimize the risk of injury in actual operation. Once approved by the Engineer, the operational effect of including additional sources of replacement water remains subject to review, pursuant to the water court's retained jurisdiction, to the extent it has or will cause injury, just as any other aspect of the augmentation plan. *See Upper Eagle Reg'l Water Auth.*, 230 P.3d at 1215–16; *Farmer's Reservoir & Irrigation Co.*, 33 P.3d at 810–11 (citing § 37-92-304(6)).

¶19 Finally, Centennial objects to reliance on C.R.C.P. 41 as the appropriate analog for proceedings under the water court's retained jurisdiction. Consistent with its view that an applicant for an augmentation plan retains an obligation to prove that other water users will not be injured by its addition of a new source of replacement water, Centennial characterizes the applicant as occupying the position of a plaintiff in a civil proceeding, the party against whom rather than in favor of whom Rule 41 provides for a judgment to be rendered. *See* C.R.C.P. 41(b)(1). For the reasons we have explained, this is simply a misreading of section 37-92-305(8)(c).

¶20 Relying in addition on the decree's insertion of the term "prima facie," Centennial also misreads section 45.2 to deviate from our prior apportionment of the relative burdens of proof in a proceeding under the court's retained jurisdiction. *See Upper Eagle Reg'l Water Auth.*, 230 P.3d at 1216 ("[T]he persons seeking to invoke reconsideration of the injury question under the decree's retained jurisdiction provision have the initial burden of establishing that injury has occurred . . . ." (quoting *Farmer's Reservoir & Irrigation Co.*,

14

33 P.3d at 812)) (emphasis omitted).  The decree assigned Centennial, as the objector invoking the court's retained jurisdiction, the initial burden of "establish[ing] the prima facie facts and the existence of the injury alleged in [its] motion" before WAS would have "the ultimate burden of proof to show either that the alleged injury ha[d] not occurred or [would] not occur, or to propose additional terms and conditions which [would] prevent the injury from occurring."  Although Centennial concedes that this burden requires it to "establish" facts and the "existence" of injury sufficient to sustain a judgment in its favor unless contradictory evidence is produced by WAS, as a result of the decree's reference to "prima facie facts," it appears to understand its burden as merely requiring the production of evidence from which a reasonable trier of fact *could find* in its favor in the absence of contradictory evidence.

¶21     As Centennial argues, we have commonly used the term "prima facie" in distinguishing the plaintiff's burden in overcoming a motion for directed verdict in a jury trial from its burden to survive a motion to dismiss in a trial to the court pursuant to C.R.C.P. 41(b), *see, e.g., Teodonno v. Bachman*, 404 P.2d 284, 285 (Colo. 1965); and we have similarly applied that distinction in cases governed by the water rules, where the water court is the trier of fact.  *See City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 615 (Colo. 2005); *Public Serv. Co. of Colo. v. Bd. of Water Works*, 831 P.2d 470, 480 (Colo. 1992).  In that context, we have juxtaposed making a prima facie case, meaning producing evidence from which a reasonable jury could find in the plaintiff's favor, from proving to the satisfaction of the trial court that the plaintiff should prevail, in the absence of evidence subsequently offered by the movant proving the contrary.  *See City of Aurora ex*

15

*rel. Util. Enter.*, 105 P.3d at 615; *Public Serv. Co. of Colo.*, 831 P.2d at 480. The term itself is, however, not so limited, and there is no indication in the decree of any intent to alter the relative burdens required in a retained jurisdiction proceeding.

¶22    Although the term "prima facie case" now commonly appears in distinguishing the relative burdens dictated by Rules 50 and 41 of the federal and state rules of civil procedure, *see* J.R. Kemper, Comment Note, *Power of Court Sitting as Trier of Fact to Dismiss at Close of Plaintiff's Evidence, Notwithstanding Plaintiff Has Made Out Prima Facie Case*, 55 A.L.R. 3d 272 (1974), its meaning is not limited so narrowly. *Cf.* 1 Clifford S. Fishman & Anne T. McKenna, *Jones on Evidence* § 3:6 (7th ed. 2017) (explaining that "prima facie case" simply means "a party's obligation to produce sufficient evidence to move the proceeding on to the next stage"). Indeed, when used as a modifier, "prima facie" can also mean "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." *Prima facie*, Black's Law Dictionary (10th ed. 2014). Courts have regularly used the term in this broader sense to refer to the quantum of evidence necessary to establish the proponent's cause of action, unless rebutted or proved to the contrary. *See, e.g., Del. Coach Co. v. Savage*, 81 F.Supp. 293, 296 (D. Del. 1948); *State ex rel. Herbert v. Whims*, 38 N.E.2d 596, 599 (Ohio Ct. App. 1941); *Pac. Tel. & Tel. Co. v. Wallace*, 75 P.2d 942, 947 (Or. 1938); *In re Fink's Estate*, 21 A.2d 883, 888 (Pa. 1941); *see generally* 9 John Henry Wigmore, *Evidence in Trials at Common Law* § 2494 (3d ed. 1940) (explaining that courts use "prima facie case" to indicate either "the duty of producing evidence to get past the judge to the jury" or, alternatively, "a general mass of strong evidence" entitling the proponent to a favorable ruling "if [the opponent] does nothing more in the way of producing

16

evidence"). Especially where, as here, "prima facie" is used to modify the term "facts," rather than "case," and requires that those facts and the existence of injury be "established" by the proponent, the term is more naturally understood, as the water court understood it, in this broader sense, which is consistent with the burdens articulated in C.R.C.P. 41(b).

¶23 As importantly, however, the water court made clear its conclusion that Centennial failed to meet its burden of proof was not based on its assessment of the weight and credibility of Centennial's evidence at all but was instead dictated by its legal determination of the meaning of "injury" in the context of its retained jurisdiction. The water court found that even if the evidence presented by Centennial were fully credited, it nevertheless failed, as a matter of law, to evidence "injury." This ruling effectively amounted to a determination that Centennial failed even to make a "prima facie case" in the narrower sense in which it is typically used with reference to jury trials.

¶24 Rather than offering evidence of a likelihood of future injury, Centennial asserted, and continues to assert, that without access to the specific information describing the proposed replacement supply, as delineated in section 13.1, it is not possible to evaluate whether the proposed source can be used without causing injury, and therefore WAS's failure to strictly comply amounts to a per se injury. As did the water court, referencing in particular other provisions of the decree further protecting objectors by prohibiting reliance on WAS's projections to withdraw until replacement water was actually available, as well as the terms and conditions devised by the Engineer to prevent injury, we reject this assertion. *See Simpson v. Yale Invs., Inc.*, 886 P.2d 689, 696 (Colo. 1994)

17

("[I]njury must be demonstrated by evidential facts and not by potentialities.") (internal quotation marks omitted).

¶25    Following the adoption of amended section 37-92-305(8), the recourse for other water users objecting to added sources of replacement water is to invoke the retained jurisdiction of the water court to demonstrate that the plan for augmentation, as decreed and as administered by the Engineer, nevertheless is unlikely to prevent injury to their senior rights. *See* § 37-92-304(6).

## IV.

¶26    Because exercise of the water court's retained jurisdiction was statutorily limited to preventing or curing injury to other water users, and because the evidence presented by Centennial failed to establish that WAS would be unable, under the conditions imposed by the Engineer for approval of the additional sources of replacement water, to deliver augmentation water sufficient to prevent injury to other water users, the water court's dismissal of Centennial's objection is affirmed.