In the Matter of the Application for Water Rights of the Upper Eagle Regional Water Authority in Eagle and Summit Counties, Colorado.

UPPER EAGLE REGIONAL WATER AUTHORITY, Applicant–Appellee

v.

Dick WOLFE, State Engineer for the State of Colorado; Alan C. Martellaro, Division Engineer for Water Division 5; and Colorado Water Conservation Board, Opposers–Appellants

Eagle County Board of Commissioners; Climax Molybdenum Company; City and County of Denver, acting by and through its Board of Water Commissioners; Town of Gypsum; Lake Creek Metropolitan District; Grand Valley Water Users Association; Orchard Mesa Irrigation District; and Ute Water Conservancy District, Opposers–Appellees.

In the Matter of the Application for Water Rights of the City of Aurora, City of Colorado Springs, Colorado River Water Conservation District, Eagle Park Reservoir Company, Eagle River Water & Sanitation District, Upper Eagle Regional Water Authority, and Vail Associates, Inc. in Eagle, Garfield, Grand, Pitkin, and Summit Counties, Colorado.

Upper Eagle Regional Water Authority; City of Aurora; City of Colorado Springs; Colorado River Water Conservation District; Eagle Park Reservoir Company; Eagle River Water & Sanitation District; and Vail Associates, Inc., Applicants–Appellees

v.

Dick Wolfe, State Engineer for the State of Colorado; Alan C. Martellaro, Division Engineer for Water Division 5; and Colorado Water Conservation Board, Opposers–Appellants

City of Aspen; Gregory A. Caretto; City and County of Denver, acting by and through its Board of Water Commissioners; Grand Valley Water Users Association; Town of Gypsum; Orchard Mesa Irrigation District; Pitkin County

Board of Commissioners; Steven J. Pittel; Public Service Company of Colorado; Southeastern Colorado Water Conservancy; and Ute Water Conservancy District, Opposers–Appellees.

Nos. 09SA168, 09SA169.

Supreme Court of Colorado, En Banc.

May 24, 2010.

Porzak Browning & Buschong LLP, Glenn E. Porzak, P. Fritz Holleman, Eli A. Feldman, Kevin J. Kinnear, Boulder, Colorado, Attorneys for Applicant–Appellees Upper Eagle Regional Water Authority.

John W. Suthers, Attorney General, Paul L. Benington, Assistant Attorney General, Water Rights Unit, Natural Resources and Environmental Section, Denver, Colorado, Attorneys for Opposers–Appellants.

Justice HOBBS delivered the Opinion of the Court.

In these two consolidated appeals from the District Court for Water Division No. 5 ("the water court"), we review the water court's judgments of dismissal and accompanying questions involving the water court's construction and implementation of the augmentation plan retained jurisdiction provision, section 37–92–304(6), C.R.S. (2009), of the Water Right Determination and Administration Act of 1969 ("the 1969 Act").[1]

In both cases, the State and Division Engineers ("the Engineers") and the Colorado Water Conservation Board ("the CWCB") sought to invoke the retained jurisdiction provision of two augmentation plan decrees. The Upper Eagle Regional Water Authority ("Authority") holds these augmentation decrees for the benefit of six member entities, including the Town of Avon, and the Metropolitan Districts of Eagle–Vail, Edwards, Arrowhead, Berry Creek, and Beaver Creek, in order to make out-of-priority diversions for municipal-type uses of Eagle River surface water and tributary groundwater throughout each water year from November through October.

In calculating depletions of Eagle River water for purposes of the two augmentation plans, the Authority employs a depletion ta-

ble setting forth monthly average depletion rates for the six entities for each month of the year. In their verified petitions and accompanying affidavits invoking the water court's retained jurisdiction, the Engineers and the CWCB allege that the Authority's accounting method—in light of actual operating experience of diversion, consumptive use, return flows, and the amount and timing of each of these components—underestimates the actual depletions these out-of-priority diversions have caused to Eagle River water, resulting in inadequate release of replacement water amounts needed for the protection of the vested water rights of others. The Engineers and the CWCB also allege an occurrence of injury to an instream flow water right.

The Engineers and the CWCB requested that the water court (1) hold evidentiary hearings to receive and consider actual water use data reflecting operation of the out-of-priority uses and depletions covered by the augmentation plans from the dates the water court entered the augmentation decrees and (2) impose appropriate terms and conditions requiring the Authority to account for its actual out-of-priority depletions and its corresponding replacement water obligations to protect vested water rights and decreed conditional water rights. The water court entered judgments dismissing both petitions.

The Authority argues, as a matter of law, that water court retained jurisdiction under section 37–92–304(6) can be invoked to remedy only actual injury to a decreed water right. The Engineers and the CWCB counter that the plain language of section 37–92–304(6) directs the water court's use of retained jurisdiction "as is necessary or desirable to preclude or remedy any such injury," and the water court should extend the period

---

1. Two of the issues presented for review in Case Nos. 09SA168 and 09SA169 are identical:

Whether the water court's retained jurisdiction under an augmentation plan may be invoked to "preclude" future injury as well as to "remedy" actual injury.
Whether the water court erred by dismissing the State's retained jurisdiction petition after finding that genuine issues of material fact exist.

The third issue presented for review in each case is slightly different. In 09SA168, the third issue presented is:

Whether the water court erred by not extending the augmentation plan's 10–year retained jurisdiction period, which expires on August 1, 2010.

The third issue presented in 09SA169 is:

Whether the water court erred by not extending the augmentation plan's 5–year retained jurisdiction period, which has now expired.

of retained jurisdiction for such time as "the nonoccurrence of injury shall not have been conclusively established." We agree with the Engineers and the CWCB.

We hold that the water court erred in dismissing the petitions of the Engineers and the CWCB in both of these cases. The petitions allege sufficient facts which, if proved, meet the petitioners' burden of going forward to show that injury has occurred or is likely to occur, based on operational experience involving the out-of-priority diversions and depletions covered by the augmentation plans. Reviewing the petitions, the water court should have conducted additional proceedings in both of these cases.

On remand, the Engineers and the CWCB have the burden of going forward with sufficient evidence that injury has occurred or is likely to occur because the existing decree provisions are inadequate to preclude or remedy injury. If the Engineers and the CWCB provide such evidence, the Authority must demonstrate non-injury and the adequacy of existing decree provisions to preclude and remedy injury to other water rights. The water court should then make findings of fact, conclusions of law, and decree revisions, as appropriate, for the purpose of precluding and remedying injury to vested water rights and decreed conditional water rights.

If the water court finds that not enough operational experience exists to permit it to consider the question of injury or to conclusively establish non-injury, it should extend the period of retained jurisdiction by an additional specified period pursuant to section 37–92–304(6).

Accordingly, we reverse the water court judgments and remand for further proceedings consistent with this opinion.

2. The Original Decrees were established in Case Nos. 80CW397 (Arrowhead Metropolitan District); W–3664 and 84CW225 (Town of Avon); W–3999 (Berry Creek Metropolitan District); W–3289 (Eagle–Vail Metropolitan District); Consolidated Case Nos. 81CW161 and 81CW195 (Edwards Metropolitan District); and W–2746 (Beaver Creek).

3. Because Beaver Creek's decree did not contain such projections, the table assumes a 5% in-

## I.

The Authority consists of six member entities, including the Town of Avon, and the Metropolitan Districts of Eagle–Vail, Edwards, Arrowhead, Berry Creek, and Beaver Creek. The Authority diverts over 5,000 acre-feet of water per year to serve approximately 25,000 customers in the second largest water system on Colorado's western slope.

Prior to the Authority's formation, each of the Authority's member entities except Beaver Creek adjudicated augmentation plans, and Beaver Creek adjudicated a change of water right (collectively, "the Original Decrees").[2] Except for the Beaver Creek decree, the Original Decrees projected future development, water demands, and consumption, including the mix of uses between in-house use and irrigation. The Original Decrees assumed 100% build-out and projected irrigation depletion rates varying from 50 to 75% and in-building depletion rates from 5 to 9%. Beaver Creek's change of water right decree contained no such projections.

In 1992–93, the Authority's engineer, Thomas Williamsen, developed a table of monthly depletion rates ("the depletion table") based on the depletion projections in the Original Decrees and related engineering reports.[3] With a column for each member entity and a row for each month, the Authority uses the table to calculate the projected depletions from out-of-priority diversions within each of the Authority's service areas for each month of the year. The depletion table calculations represent the ratio of depletions compared to diversions for each entity for each month. For the winter months (November through April), each entry reflects depletions from in-house use only. For

house depletion rate for November through April, and averages the other entities' projected depletion rates for the irrigation season (May through October). Also, the depletion table averages the calculations for Edwards for each month between May and October, as opposed to using individual monthly projections, because the original Edwards decree provided only seasonal totals of expected demands and expected depletions.

the irrigation season (May through October), each entry incorporates the in-house depletion calculation for the specific entity, combined with the projected depletions for irrigation uses. The depletion table reflects the predicted mix between in-house use and irrigation upon reaching full build-out, as projected more than twenty-five years ago in the Original Decrees. Because the depletion table was developed in the early 1990s, none of the pre–1984 Original Decrees approved or required the use of the depletion table. Nonetheless, the Authority has used the depletion table to account for all of its out-of-priority depletions in its six service areas since 1995.

The Authority applied for augmentation plans covering out-of-priority depletions in Case Nos. 98CW205 and 98CW270. On August 1, 2000, the water court approved an augmentation plan in Case No. 98CW205, identifying Eagle Park Reservoir as a supplemental replacement source of water for up to 383 acre-feet covering out-of-priority Authority depletions to the Eagle River. The water court retained jurisdiction pursuant to section 37–92–304(6) for a period of ten years for reconsideration of injury-related questions. The retained jurisdiction period will end August 1, 2010.

During the preparation of 98CW205, the Authority circulated an April 1999 engineering report containing the depletion table. The court attached the depletion table to the 98CW205 augmentation plan decree as Exhibit A, describing it as "[a] summary of the monthly depletion rates for each of the areas served by the Authority." The decree does not require the Authority to use the attached depletion table to account for its out-of-priority depletions, nor does it otherwise reference the depletion table. Instead, the 98CW205 decree requires the Authority to account for its out-of-priority depletions in accordance with the Original Decrees.

On February 6, 2003, the water court entered a decree in Case No. 98CW270, identifying Homestake Reservoir as a supplemental replacement source of water for up to 125 acre-feet covering out-of-priority Authority depletions to the Eagle River. Like 98CW205, the decree requires the Authority

to account for its out-of-priority depletions in accordance with the Original Decrees; however, the 98CW270 decree neither attaches nor references the depletion table. The water court retained jurisdiction in 98CW270 pursuant to section 37–92–304(6) for reconsideration of injury questions. The water court retained jurisdiction for a period of five years, a period which expired on February 6, 2008, after the Engineers and the CWCB had petitioned the water court to exercise its retained jurisdiction.

In 2006, the Engineers and the CWCB filed verified petitions invoking the retained jurisdiction provisions in both 98CW205 and 98CW270, alleging that the Authority's use of the depletion table in its accounting has resulted in under-replacement of out-of-priority diversions and depletions:

> Calculations completed by the Division Engineer's Office, based on the Authority's actual metered water use from 2001 to 2005, and the Authority's water use accounting from 2001 to 2005, show that the [depletion table] does not accurately determine, and in most instances underestimates, the resulting depletions for the Authority's out-of-priority diversions....

The petitions sought to enjoin the Authority's use of the depletion table to account for out-of-priority depletions, requesting terms and conditions "requiring the Authority to provide accounting satisfactory to the Division Engineer for the Authority's actual monthly mix of in-building and irrigation water uses in each of the Authority's service areas, and for the resulting out-of-priority depletions." The petitions also requested extension of the retained jurisdiction periods until the absence of injury to vested water rights is conclusively established.

In both cases, the Authority filed a motion to dismiss, arguing that, while the Authority has used the depletion table to calculate its replacement obligations, the Engineers and the CWCB could not invoke retained jurisdiction because the augmentation plans had not operated during the alleged period of injury—the irrigation seasons between 2001 and 2005. The Authority argued that the plans had not operated because neither the Eagle Park Reservoir decreed as a supple-

mental augmentation source in 98CW205, nor the Homestake Reservoir decreed as a supplemental augmentation source in 98CW270, had been used to replace the Authority's out-of-priority depletions between May and October. The Authority claims that historic consumptive use credits from changes of water rights were used to replace the Authority's out-of-priority depletions and that no reservoir releases were required. The Authority attached an affidavit from its engineer, Thomas Williamsen, in support of its claim that no reservoir releases had occurred during the irrigation seasons.

The Engineers and the CWCB opposed the motions to dismiss, arguing that the Authority had used the depletion table to account for its depletions from 2001 to 2005, injurious depletions had occurred in the irrigation season due to use of the depletion table, and the Authority made reservoir releases during those years. The Engineers and the CWCB submitted the affidavit of Assistant Division Engineer Bryan Kyle Whitaker in support of these factual contentions.

The Engineers and the CWCB then moved to amend their pleadings. Specifically, they sought to amend their requests to extend the retained jurisdiction periods so that, should the water court determine that the Engineers and the CWCB cannot yet invoke the retained jurisdiction provisions, the water court would extend the retained jurisdiction periods for a period of ten years after the Authority makes releases from Eagle Park Reservoir or Homestake Reservoir during the irrigation season months. In 98CW205, the Engineers and the CWCB also moved to add claims regarding the Authority's water use during September 2006, alleging that the flow in the Eagle River fell below the CWCB's decreed instream flow water right and that the Authority made a release from Eagle Park Reservoir.[4]

The water court granted the Engineers' and the CWCB's motions to amend their pleadings and denied the Authority's motions to dismiss on June 7, 2007, but reconsidered

and granted the Authority's motions to dismiss sua sponte on December 5, 2008. Positing its conclusion on the lack of reservoir releases, the water court ruled that "[r]etained jurisdiction may only be invoked when there is injury from the operation of a plan for augmentation" and that the Engineers and the CWCB could not invoke retained jurisdiction because the plans in the two cases had not "operated." The water court did not address the Engineers' and the CWCB's request to extend the retained jurisdiction periods until the absence of injury could be conclusively established. Likewise, the water court did not address the Engineers' and the CWCB's additional claims in 98CW205 regarding the alleged September 2006 out-of-priority depletions affecting the CWCB's instream flow water right.

The Engineers and the CWCB then appealed the water court's judgments in both cases to us.

## II.

We conclude that the water court erred in dismissing the Engineer and the CWCB petitions in the two cases before us. The petitions allege sufficient facts which, if proved, meet the petitioners' burden of going forward to show that injury has occurred or is likely to occur, based on operational experience involving the out-of-priority diversions and depletions covered by the augmentation plans. Reviewing the petitions, the water court should have conducted additional proceedings in both of these cases.

### A. Standard of Review

We review for abuse of discretion the water court's determination whether to invoke or extend retained jurisdiction under section 37–92–304(6). *Farmers Reservoir & Irrigation Co. v. Consol. Mut. Water Co.,* 33 P.3d 799, 806 (Colo.2001). When considering a motion to dismiss under C.R.C.P. 12(b)(5), the court must take all allegations in the complaint as true and draw all reasonable

---

4. The CWCB was decreed an instream flow right in Case No. 80CW134 in the amount of 85 cubic feet per second ("cfs"). The Engineers and the

CWCB alleged that the Eagle River fell below the required 85 cfs for three consecutive days in September 2006.

inferences in favor of the plaintiff. *See, e.g., Medina v. State,* 35 P.3d 443, 452 (Colo.2001).

■ We review de novo the water court's construction of statutes. *Simpson v. Bijou Irrigation Co.,* 69 P.3d 50, 58 (Colo. 2003). In construing a statute, we adhere to the General Assembly's purpose and intent in enacting the statute. *Well Augmentation Subdist. of the Cent. Colo. Water Conservancy Dist. v. City of Aurora,* 221 P.3d 399, 410 (Colo.2009); *Farmers Reservoir & Irrigation Co.,* 33 P.3d at 805. We give effect to each word and construe each provision in harmony with the overall statutory design, considering the General Assembly's intent when enacting, amending, and repealing statutes. *Well Augmentation Subdist.,* 221 P.3d at 410.

## B. Augmentation Plans and Retained Jurisdiction

### 1. Augmentation Plans

■ The Colorado Constitution guarantees the right to use beneficially a specified amount of natural stream surface and tributary groundwater in priority under a decree, to the exclusion of all others not then in priority under a decreed water right. Colo. Const. art. XVI, §§ 5–6; *Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1146–47 (Colo.2002). The objective of the 1969 Act is to promote multiple uses of a finite resource for beneficial purposes. *Empire Lodge,* 39 P.3d at 1146–47.

■ In light of the over-appropriated status of nearly all of Colorado's major river basins, the change of water right and augmentation provisions of the 1969 Act have become increasingly important. *See Colo. Water Conservation Bd. v. City of Central,* 125 P.3d 424, 439 (Colo.2005); Mari W. Deminski, *Water Rights: Real Property,* in *The Colorado Water Law Benchbook* 7–13 (2009). The General Assembly has allowed for adjudication of water rights changes, exchanges, and augmentation plans in order to allow newer uses of water to come into being so long as the vested rights of others are protected. § 37–92–305(3), (5), (8), C.R.S. (2009); *Farmers Reservoir & Irrigation Co.,* 33 P.3d at 806. Accordingly, where there is no remaining unappropriated water available for appropriation, junior water users may divert out of priority in accordance with a decreed augmentation plan that adequately protects the vested water uses of others that operate in priority. *Buffalo Park Dev. Co. v. Mountain Mut. Reservoir Co.,* 195 P.3d 674, 684 (Colo.2008); *Farmers Reservoir & Irrigation Co.,* 33 P.3d at 806.

■ A plan for augmentation is defined as a "detailed program ... to increase the supply of water available for beneficial use," accomplished "by the development of new or alternate means or points of diversion, by a pooling of water resources, by water exchange projects, by providing substitute supplies of water, by the development of new sources of water, or by any other appropriate means." § 37–92–103(9), C.R.S. (2009). Plans for augmentation are intended to optimize the "beneficial utilization of the waters of this state." § 37–92–501.5, C.R.S. (2009); *see Alamosa–La Jara Water Users Prot. Ass'n v. Gould,* 674 P.2d 914, 935 (Colo.1984) (clarifying that the objective of administration of water rights is "optimum use"); James N. Corbridge, Jr. & Teresa A. Rice, *Vranesh's Colorado Water Law* 155 (revised ed. 1999). Plans for augmentation are a legislative response to the rigidities of strict enforcement of priorities. A. Dan Tarlock, *Law of Water Rights and Resources* 5–147 (2009); *see also* Harrison C. Dunning, *The 'Physical Solution' in Western Water Law,* 57 U. Colo. L.Rev. 445, 465 (1986).

The 1969 Act requires that a "plan for augmentation ... shall be approved if such [plan] will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right." § 37–92–305(3). The 1969 Act requires an adjudication to authorize the out-of-priority diversion, and no priority results from the augmentation plan's approval. § 37–92–302(1)(a), C.R.S. (2009); *City of Central,* 125 P.3d at 435–36; *Empire Lodge,* 39 P.3d at 1155.

■ Central to the water court's review of an augmentation plan is the express requirement that augmentation plans must be non-injurious to vested water rights and that they only be approved upon terms and conditions that prevent injury to those rights.

§ 37–92–305(3), (5), (8); *City of Central,* 125 P.3d at 439; *see also Well Augmentation Subdist.,* 221 P.3d at 411; *Buffalo Park,* 195 P.3d at 684; *In re Plan for Augmentation of the City & County of Denver ex rel. Bd. of Water Comm'rs,* 44 P.3d 1019, 1025 (Colo. 2002). Out-of-priority diversions can occur only when the out-of-priority diverter supplies replacement water that is suitable in quality and quantity to substitute for the diminished amount available to other water rights holders exercising their priorities. § 37–92–305(5), (8); *Empire Lodge,* 39 P.3d at 1150.

 An augmentation decree holder must replace water to the stream in the amount, time, and location necessary to provide vested water rights and decreed conditional water rights the water that would have been available absent the out-of-priority diversion and resulting depletion. *See* § 37–92–305(3), (8); *Well Augmentation Subdist.,* 221 P.3d at 410; *In re Plan for Augmentation of the City & County of Denver,* 44 P.3d at 1025. Depletions not adequately replaced shall result in the curtailment of the augmentation decree holder's out-of-priority diversions. *Empire Lodge,* 39 P.3d at 1150 (quoting *Williams v. Midway Ranches Prop. Owners Ass'n,* 938 P.2d 515, 522 (Colo.1997)).

 The 1969 Act requires augmentation plan applicants to remedy present and future impacts of their out-of-priority diversions. *Well Augmentation Subdist.,* 221 P.3d at 411–12. In *Well Augmentation Subdistrict,* we affirmed the water court's requirement that an augmentation plan applicant provide replacement water for pre-application depletions that have a continuing injurious effect on surface waters. *Id.* at 412–13. We based our holding on a plain reading of the 1969 Act's requirements that the water court prevent present and future injury to other water rights. *Id.* at 411. We understood the General Assembly's broad language in section 37–92–305—which enables the water court to craft terms and conditions aimed at protecting vested water rights and decreed conditional water rights from injury—as allowing the water court to require replacement of past depletions whose effect on the stream will occur in the future. *Id.*

 The Engineers and the CWCB have standing to invoke the retained jurisdiction provisions of the decrees in the cases before us. The State and Division Engineers are tasked with administering and distributing Colorado's water resources under the prior appropriation system. § 37–92–501, C.R.S. (2009). With regard to augmentation plans in particular, the General Assembly has instructed the Engineers to "encourage and develop augmentation plans" and has required them to take "such other reasonable action as may be necessary in order to allow continuance of existing uses and to assure maximum beneficial utilization of the waters of this state." § 37–92–501.5. "In so doing, the state engineer shall curtail all out-of-priority diversions, the depletions from which are not so replaced as to prevent injury to vested water rights." *Id.* The Engineers have standing to appear on behalf of the state to fulfill their statutory duties. *Wadsworth v. Kuiper,* 193 Colo. 95, 99–101, 562 P.2d 1114, 1116–18 (1977). The CWCB is required to enforce the instream flow water rights it obtains in the name of the people, which it seeks to do in these cases. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1260–61 (Colo.1995).

**2. Retained Jurisdiction**

 In the cases now before us, we are required for the first time to construe and give effect to section 37–92–304(6)'s words "to preclude" as well as "remedy" injury to other water rights. This retained jurisdiction provision states:

Any decision of the water judge ... dealing with a change of water right, implementation of a rotational crop management contract, or *a plan for augmentation* shall include the condition that the approval of such change, contract, or plan *shall be subject to reconsideration by the water judge on the question of injury to the vested rights of others for such period after the entry of such decision as is necessary or desirable to preclude or remedy any such injury ....* The water judge shall specify such period in the decision, but *the*

*period may be extended upon further decision by the water judge that the nonoccurrence of injury shall not have been conclusively established .... All decisions of the water judge, including decisions as to the period of reconsideration and extension thereof, shall become a judgment and decree ... and be appealable upon entry, notwithstanding conditions subjecting the decisions to reconsideration on the question of injury to the vested rights of others as provided in this subsection (6).*

§ 37–92–304(6) (emphasis added).

 The underscored language plainly demonstrates the General Assembly's intent that the retained jurisdiction period function to allow reconsideration of injury determinations the water court previously made, protective conditions, and extension of the retained jurisdiction period until such time as the court is convinced that no injury to vested water rights and decreed conditional water rights will occur as a result of the augmentation plan. *Id.; see Farmers Reservoir & Irrigation Co.,* 33 P.3d at 810–11; *City of Thornton v. Clear Creek Water Users Alliance,* 859 P.2d 1348, 1360 (Colo.1993). The General Assembly's intent to protect vested water rights holders from injury caused by out-of-priority diversions is based on Colorado's constitutional guarantee protecting the right to use water in priority. *See* Colo. Const. art. XVI, §§ 5–6; *Empire Lodge,* 39 P.3d at 1147.

 The water court's initial injury determination during formulation of the augmentation plan decree, before the plan is placed into operation, is necessarily imprecise because the court cannot be expected to accurately predict the actual future effects of an augmentation plan. *In re Plan for Augmentation of the City & County of Denver,* 44 P.3d at 1026; *Farmers Reservoir & Irrigation Co.,* 33 P.3d at 808. The General Assembly requires that every augmentation plan contain a period of retained jurisdiction during which the water court may reconsider possible injury to senior appropriators. § 37–92–304(6); *In re Plan for Augmentation of the City & County of Denver,* 44 P.3d at 1026; *Farmers Reservoir & Irrigation Co.,* 33 P.3d at 808.

The legislative history of the retained jurisdiction provision likewise supports this plain reading of the provision. *See Farmers Reservoir & Irrigation Co.,* 33 P.3d at 808–11. When initially adopted as part of the 1969 Act, section 37–92–304(6) allowed, but did not require, the water court to include in the augmentation plan decree a two-year period for reconsidering the question of injury to the vested water rights of others. *Id.* at 808 (citing ch. 373, sec. 1, § 148–21–20(6), 1969 Colo. Sess. Laws 1200, 1210). In 1977, the General Assembly amended section 37–92–304(6) to require the inclusion of a retained jurisdiction provision in augmentation plan judgments and decrees, but gave the water court discretion in determining the period of retained jurisdiction "necessary or desirable to preclude or remedy [ ] injury." *See id.* (citing ch. 483, sec. 1, § 37–92–304(6), 1977 Colo. Sess. Laws 1702, 1703).

Also through the 1977 amendment, the General Assembly permitted the water court to extend the period of retained jurisdiction until "the nonoccurrence of injury [is] conclusively established." Ch. 483, sec. 1, § 37–92–304(6), 1977 Colo. Sess. Laws 1702, 1703. The 1977 amendments to section 37–92–304(6) thus reflect the General Assembly's determination that retained jurisdiction is necessary in every augmentation plan to protect vested water rights and decreed conditional water rights.

The legislative deliberations concerning the 1977 amendments to section 37–92–304(6) recognized that augmentation plans may be straightforward or complex in their administration, and thus that reconsideration by the water court may be necessary once the plan is placed into operation. As we noted in *Farmers Reservoir & Irrigation Co.,* Senator Anderson, an author of the 1977 amendments, stated that the changes were intended to

allow the judge to keep open this plan for augmentation for such period as such decision is *necessary or desirable to preclude injury* .... So what we are saying is that the judge can keep this plan for augmentation open for as long as he deems neces-

sary in order to determine if there is injury to a senior water user.

33 P.3d at 809 (emphasis added) (quoting *Hearing on S.B. 4 before the S. Comm. on Agric., Natural Res., & Energy*, 51st Gen. Assemb., 1st Sess. (Colo. Mar. 31, 1977) (statement of Sen. Anderson)). A proponent of the 1977 amendments clarified that, while all other aspects of an augmentation plan become final when the judgment and decree is entered, the question of *future injury* is to be resolved by invoking retained jurisdiction. *Id.* at 809–10 (citing *Hearing on S.B. 4 before the H. Comm. on Agric., Livestock, & Natural Res.*, 51st Gen. Assemb., 1st Sess. (Colo. Apr. 25, 1977) (statement of attorney David Brown, proponent of S.B. 4)).

Discussing the specific addition of language requiring the water court to retain jurisdiction "for such period . . . as is necessary or desirable to preclude or remedy any [ ] injury," Senator Anderson again stated,

> [W]hat the [ ] amendment does of substance, is that it changes the plans for augmentation that the court makes the determination and allows the judge to keep open this plan for augmentation for such period as such decision *is necessary or desirable to preclude injury.*

*Hearing on S.B. 4 before the S. Floor on Second Reading*, 51st Gen. Assemb., 1st Sess. (Colo. Mar. 31, 1977) (statement of Sen. Anderson) (emphasis added).

In later hearings regarding section 37–92–304(6), testimony before the General Assembly emphasized the importance of having a test period within which to determine how an augmentation plan or other applicable change affects the stream system. *See Farmers Reservoir & Irrigation Co.*, 33 P.3d at 810 (quoting *Hearing on H.B. 1055 before the S. Comm. on Agric., Natural Res., & Energy*, 53d Gen. Assemb., 1st Sess. (Colo. Apr. 21, 1981) (statement of attorney Charles Elliott)).[5] Because real life operational experi-

ence may be different than predicted, the water court may need to exercise its retained jurisdiction, based on operational experience after the water court enters the augmentation decree. *Id.*

Accordingly, in *Farmers Reservoir & Irrigation Co.* we concluded that the General Assembly intended the retained jurisdiction provision to function as a trial period for operation of the augmentation plan, in order to test the prediction and finding of non-injury the water court made upon entry of the judgment and decree. *Id.* at 811. The retained jurisdiction period allows the water court to reconsider its prior determination of non-injury and the measures necessary to prevent injury once operational experience of out-of-priority diversions and depletions reveals the plan's effect upon the stream system. *Id.* at 810–11.

The retained jurisdiction provision of the statute authorizes the water court to reconsider its initial finding that the out-of-priority diversions and depletions covered by the augmentation plan will not injure vested water rights. *Id.* at 808. In *Farmers Reservoir & Irrigation Co.*, we considered whether an augmentation plan decree's historical consumptive use determinations[6] could be reviewed under retained jurisdiction. *Id.* at 804. After reviewing the plain language of section 37–92–304(6) and its legislative history, we concluded that "the General Assembly intended the retained jurisdiction provision to apply to the Water Court's role in predicting future injurious effect and the measures likely to prevent injury, not to the Water Court's fact finding role in determining the appropriation's historic use." *Id.* at 808. The prediction of future injury caused by augmentation plans involves an inherent amount of uncertainty. Therefore, the General Assembly designed the retained jurisdiction period to test the prediction and finding of non-injury. *Id.* at 811.

---

5. This testimony occurred in regard to the 1981 amendment to section 37–92–304(6) that extended the retained jurisdiction period requirement to changes of water rights. Ch. 434, sec. 1, § 37–92–304(6), 1981 Colo. Sess. Laws 1792, 1792–93.

6. Augmentation plan and change of water right decrees are limited in quantity and time by historic use. *Farmers Reservoir & Irrigation Co.*, 33 P.3d at 807. When issuing an augmentation plan decree, the water court must determine as a matter of fact the amount of the original appropriation's beneficial historic use. *Id.*

As a matter of law, the retained jurisdiction period runs from the time the water court enters its decree on a change in water right or augmentation plan application. § 37–92–304(6); *Clear Creek Water Users Alliance*, 859 P.2d at 1359. In *Clear Creek*, the Alliance sought to change its decreed conditional water right, which included a proposed reservoir, by adding five alternate proposed reservoir sites. *Id.* at 1349. The City of Thornton objected, arguing that the movement of the water to alternate storage sites would expand the Alliance's conditional water right. *Id.* at 1353–54. The water court granted the change in water right, determining that no such expansion of water rights would result. *Id.* at 1354.

The water court retained jurisdiction for five years because of the Alliance's lack of specificity with regard to the locations of a proposed reservoir and point of diversion, and the corresponding inability of the court to predict possible injury without that specific information. *Id.* at 1354–55. The City of Thornton appealed, arguing that the retained jurisdiction period should not begin until the reservoirs were built and use began because the water court would not be in a position to assess injury until the change had been affected. *Id.* at 1359–60. We disagreed, holding that section 37–92–304(6) plainly states the retained jurisdiction period runs from the date of the decision and that it may be extended beyond the five years if the water court remains unconvinced that the change adequately protects the City of Thornton from injury. *Id.*

The water court should invoke retained jurisdiction to prevent injury to vested water rights where the operational experience of out-of-priority diversions and uses covered by the augmentation plan indicates that the replacement water is not of the quality or quantity sufficient to satisfy the entitlements of water rights holders. *In re Plan for Augmentation of the City & County of Denver*, 44 P.3d at 1024.

## C. Application to this Case

■ The water court dismissed the Engineer and the CWCB petitions in both cases before us, concluding that the augmentation plans had not yet "operated" and therefore the water court's retained jurisdiction could not be invoked. The water court based its conclusion on the Authority's assertion that it had not yet released water from the Eagle Park and Homestake Reservoirs, identified as supplemental augmentation sources in the plans.

Under C.R.C.P. 12(b)(5), we must take all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Medina*, 35 P.3d at 452. Here, the Engineers and the CWCB allege that they have obtained new information since the augmentation plan decrees were entered—actual metered water use and accounting data—demonstrating that the Authority's use of the depletion table is insufficient to preclude injury to other water rights. They also allege that in September of 2006 the flow in the Eagle River fell below the CWCB's decreed instream flow water right. Thus, they allege injury could and has occurred from the Authority's use of the contested depletion table and that the water court should reopen the decrees to add sufficient protective conditions for accounting.

■ We hold that the water court erred in dismissing the two petitions. In doing so, the water court failed to give effect to section 37–92–304(6) and to C.R.C.P. 12(b)(5). As a matter of law, the retained jurisdiction period contained in an augmentation decree begins and the augmentation plan is effective for operational purposes upon entry of the decree, even though the plan may not become fully operational until sometime later in the future.

### 1. The Operational Issue

Section 37–92–304(6) plainly states that the retained jurisdiction period is to be set by the trial judge "*for such period after the entry of such decision as is necessary or desirable to preclude or remedy any [ ] injury.*" (Emphasis added); *see also Clear Creek Water Users Alliance*, 859 P.2d at 1359–60. In *Clear Creek*, we disagreed with the City of Thornton's argument that the retained jurisdiction period should not begin to run until the subject reservoir had been

fully built because only then would the water court "be equipped with the operational facts to examine the diversions, use, and return flows to determine whether water users such as Thornton will be injured." 859 P.2d at 1359.

■ We cannot inconsistently conclude that, while retained jurisdiction runs from the moment the decrees were entered, it cannot be invoked until the augmentation plans have reached full operation. Instead, the critical inquiry of the water court in determining whether to reconsider the question of injury is whether operational experience obtained after entry of the augmentation plan decree indicates that vested water rights and conditionally decreed water rights may not be sufficiently protected against injury under provisions of the existing decree. The Authority argues that the water court cannot exercise retained jurisdiction until reservoir releases occur from Eagle Park and Homestake Reservoirs. However, the plans' decrees became effective upon the date of their entry—three to six years before the Engineers and the CWCB filed their petitions—and since then, the Authority has operated under the auspices of these augmentation plans. The water court erroneously concluded that the augmentation plans have not yet operated. The Engineers and the CWCB have adduced a sufficient factual basis for claiming under retained jurisdiction that the Authority's actual metered water use and accounting since the entry of the decrees show that the Authority is not accurately accounting for the depletions caused by its out-of-priority diversions.

The three to six years of metered water use provide sufficient operational experience for the water court to reconsider the question of precluding and remedying injury ascribable to the out-of-priority diversions. Whether or not the Authority has made reservoir releases from Eagle Park or Homestake Reservoir does not constrain exercise of the water court's retained jurisdiction.

### 2. Precluding and Remedying Injury

The General Assembly has provided that all augmentation plan decrees include a retained jurisdiction period necessary or desirable to preclude and remedy injury and that the water court should extend retained jurisdiction until such time as non-injury is conclusively proved. § 37–92–304(6). "Preclude" means "to prevent or hinder by necessary consequence or implication," and is synonymous with "to hinder or stop (something that may occur) or ... to stop (someone about to act, or someone's action)." *Webster's Third New International Dictionary* 1785, 1798 (2002). The General Assembly's use of the word "preclude" makes clear its intent that retained jurisdiction be invoked to prevent anticipated injury to vested water rights and decreed conditional water rights, even if actual injury has not yet occurred. Were we to require a showing of actual injury having already occurred, we would fail to give effect to the specific words used by the General Assembly that retained jurisdiction is properly invoked to prevent injury to vested rights. *See Well Augmentation Subdist.*, 221 P.3d at 410.

The legislative deliberations regarding section 37–92–304(6) support our reading of this plain language. The General Assembly's focus in requiring the inclusion of a retained jurisdiction period in augmentation plans was on the importance of reconsidering the water court's initial finding of non-injury in light of real life operational experience. *Farmers Reservoir & Irrigation Co.*, 33 P.3d at 810 (quoting *Hearing on H.B. 1055 before the S. Comm. on Agric., Natural Res., & Energy*, 53d Gen. Assemb., 1st Sess. (Colo. Apr. 21, 1981) (statement of attorney Charles Elliott)).

The General Assembly sought to ensure the protection of vested water rights from injury caused by those out-of-priority diversions authorized by augmentation plan decrees. Were we to require a vested water right holder to wait until actual injury has occurred—even though the operational experience of the augmentation plan indicates that injury will occur in the future—we will have failed to protect that vested water right from injury.

Our interpretation accords with our prior decisions applying section 37–92–304(6). *See In re Plan for Augmentation of the City &*

*County of Denver*, 44 P.3d at 1024, 1032 (holding that retained jurisdiction should be invoked where operational experience indicates that senior appropriators will be injured by the plan); *Farmers Reservoir & Irrigation Co.*, 33 P.3d at 808 (holding that the water court's factual determinations other than its injury findings become final and appealable upon entry of the decree and may not be reconsidered under retained jurisdiction); *Clear Creek Water Users Alliance*, 859 P.2d at 1359 (holding that the retained jurisdiction period runs from the time the water court enters its decision and not upon full operation). Likewise, our holding accords with our understanding that the 1969 Act requires augmentation plan decree holders to remedy present and future impacts of their out-of-priority diversions. *See Well Augmentation Subdist.*, 221 P.3d at 411–12.

### 3. Retained Jurisdiction Burdens

Contrary to the Authority's argument, our holding is consistent with *Farmers Reservoir & Irrigation Co.* The Authority points to our general discussion in *Farmers* of the invocation of retained jurisdiction to address injury that "has occurred" as a result of the operation of an augmentation plan. *See* 33 P.3d at 812 ("[T]he persons seeking to invoke reconsideration of the injury question under the decree's retained jurisdiction provision have the initial burden of establishing that injury *has occurred* ....") (emphasis added); *see also id.* at 802 (One purpose of adopting section 37–92–304(6) was "to address injury ... *that results* from placing ... the augmentation plan into operation.") (emphasis added).

However, the facts of *Farmers* are fundamentally different from the present case. The facts of that case did not raise the issue of whether retained jurisdiction could be invoked to address anticipated future injury, and we did not address that issue. Instead, *Farmers* dealt with the adjudicated consumptive use credits attributable to a change of water right, a matter we determined could not be revisited through retained jurisdiction. *Id.* at 804, 808.

Furthermore, the legislative history analysis we conducted in *Farmers* wholly supports

our holding in this case. *Id.* at 811 (concluding that the legislative intent of section 37–92–304(6) was to allow the court to revisit the question of future injury and to implement additional measures to prevent injury once the plan becomes operational). In light of our analysis in this opinion of the General Assembly's inclusion of the language "to preclude" as well as "remedy" injury, we now extend our discussion in *Farmers*.

The purpose of an augmentation plan decree is to preclude and remedy out-of-priority diversions and depletions that injure or could injure vested water rights and decreed conditional water rights. Before the water court may enter the augmentation plan decree in the first instance, it must find that out-of-priority diversions and depletions covered by the augmentation plan will not cause injury and the protective conditions included in the decree are adequate to preclude and remedy injury.

When enacting section 37–92–304(6), the General Assembly determined that operational experience under an augmentation plan or change of water right decree is necessary to test the water court's initial findings of non-injury and adequacy of the decree's protective conditions to preclude and remedy injury. It therefore required every augmentation plan and change of water right decree to include a sufficient period of retained jurisdiction, so that the water court can reopen its proceedings on the question of injury and consider protective conditions necessary to preclude and remedy injury. As a matter of law, the operational test period begins upon entry of a final augmentation plan or change of water right decree.

A petitioner who seeks to have the water court reopen an augmentation plan decree must plead sufficient facts which, if proved, meet its burden of going forward to show that injury has occurred or is likely to occur, based on operational experience involving the out-of-priority diversions and depletions covered by the augmentation plan. If the petition alleges such facts, the water court should conduct additional proceedings. In such additional proceedings, the petitioner has the burden of going forward with sufficient evidence that injury has occurred or is

likely to occur because the existing decree is inadequate to preclude or remedy injury.

If the petitioner meets its burden of going forward, the burden of establishing non-injury and the existence of adequate provisions in the existing decree to preclude and remedy injury rests upon the holder of the augmentation plan decree. Following presentation of the parties' evidence, the water court should then make findings of fact and conclusions of law on the issues of non-injury and, if appropriate, revise the decree for the purpose of precluding and remedying injury.

If the water court finds that insufficient operational experience exists to permit it to consider the question of injury or to conclusively establish non-injury, it should extend the period of retained jurisdiction by an additional specified period in the revised decree pursuant to section 37–92–304(6).

### 4. Accounting Reflecting Actual Depletions

The Engineers and the CWCB allege that the Authority's accounting method—in light of actual operating experience of diversion, consumptive use, return flows, and the amount and timing of these components—underestimates the actual depletions these out-of-priority diversions have caused to Eagle River water. Retained jurisdiction is the proper mechanism for the water court to consider whether the Authority's accounting of its out-of-priority depletions and its corresponding replacement obligations is sufficiently protective against injury and, if not, to fashion additional or modified protective conditions for the augmentation decrees.

The depletion table the Authority uses is based on projections from nearly twenty-five years ago and is not premised upon an actual mix of uses and actual depletion rates. *Upper Eagle Reg'l Water Auth. v. Simpson,* 167 P.3d 729, 736 (Colo.2007). In *Upper Eagle,* we cautioned that the Authority's depletion table is subject to examination upon exercise of retained jurisdiction taking into account the actual mixes of uses and depletions. *Id.* While we affirmed the water court's factual finding that the CWCB had not proven the depletion table's alleged injurious effect at the time that augmentation decree was being

formulated, *id.* at 734, we did so "with significant reservations about the Authority's use of the projected depletions table, which was never premised upon an actual mix of uses or actual depletion rates but rather dated estimates of those figures," *id.* at 736. We noted that "[m]ore definite answers to [the question of injury] may hinge on the water court's retained jurisdiction, which will operate as a test period for the water court's findings by allowing for reconsideration of the depletion table if actual operation of the plan results in injury." *Id.* (citing § 37–92–304(6)).

Authority accounting of actual out-of-priority diversions, mix of uses, consumptive use depletions, and augmentation replacement made to the stream for protection of vested rights is precisely the kind of issue and protective condition the water court is authorized to consider under its retained jurisdiction to "avoid injury" to vested water rights. *See* § 37–92–305(8); *see also Well Augmentation Subdist.,* 221 P.3d at 410. Such accounting would enable the Engineers to fulfill their statutory duty to prevent injury to vested water rights and conditional decreed water rights resulting from the Authority's out-of-priority diversions. *See* § 37–92–501.5. Avoidance of injurious depletions is a fundamental part of the General Assembly's design of the augmentation statutes, which were a significant adjustment to the doctrine of prior appropriation.

### 5. Conclusions

We conclude that the water court erred in dismissing the petitions of the Engineers and the CWCB in both of these cases. The petitions allege sufficient facts which, if proved, meet the petitioners' burden to show that injury has occurred or is likely to occur, based on operational experience involving the out-of-priority diversions and depletions covered by the augmentation plans. Reviewing the petitions, the water court should have conducted additional proceedings in both of these cases pursuant to section 37–92–304(6).

On remand, the Engineers and the CWCB have the burden of going forward with sufficient evidence that injury has occurred or is likely to occur because the existing decree

provisions are inadequate to preclude or remedy injury. If the Engineers and the CWCB provide such evidence, the Authority must demonstrate non-injury and the adequacy of existing decree provisions to preclude and remedy injury to other water rights. The water court should then make findings of fact, conclusions of law, and decree revisions, as appropriate, for the purpose of precluding and remedying injury to vested water rights and decreed conditional water rights.

If the water court finds that insufficient operational experience exists to permit it to consider the question of injury or to conclusively determine non-injury, the water court should extend the period of retained jurisdiction through decree revisions, in order to gain additional operational experience.

### III.

Accordingly, we reverse the water court's dismissal judgments and remand these cases for further proceedings consistent with this opinion.